## JAMES GAMBLE, RESPONDENT, *v.* THE QUEENS COUNTY WATER COMPANY, ROBERT F. MULLINS AND OTHERS, APPELLANTS.

*Issue of stock and bonds by a corporation — when the court will restrain it.*

In an action, brought to enjoin the defendants from carrying out a resolution directing the issuing of stock and bonds with which to purchase property proposed to be sold to the defendant, The Queens County Water Company, a corporation incorporated under the general manufacturing act, it appeared that the property was to be sold by one Robert F. Mullins, who was a trustee thereof, and that the resolution provided for the issuing of $50,000 of stock and $60,000 in mortgage bonds for property, the value of which was not over $65,000.

*Held,* that as the stock must be treated as cash, and had to be taken at its par value of $50,000, it would leave, to be paid by these bonds, the balance of the value of this property, viz., $15,000, which would be an issue at the rate of twenty-five cents upon the dollar of the bonds, which would be secured by a mortgage upon the identical property sold.

It was claimed that as a majority of the stockholders of this corporation, including Mullins, consented to the arrangement, the plaintiff could not maintain this action.

*Held,* that although, in all matters of administration, the wishes of the majority must control, yet where such administration tends to fraudulently deprive the minority of their rights and interests in the corporation the courts will interfere for their protection.

That the issuing of these bonds at twenty-five cents on the dollar, under the facts disclosed in this case, would be such a wanton waste of the property of this

corporation as called upon a court of equity to intervene for the protection of the stockholders who were to profit by this extraordinary transaction.

*Van Cott* v. *Van Brunt* (82 N. Y. 540) distinguished.

APPEAL from a judgment entered, upon the trial of the action at a New York Special Term, on May 11, 1888, in the office of the clerk of the city and county of New York, enjoining the carrying out of a resolution of the stockholders of the defendant corporation authorizing the issuing of certain stock and mortgage bonds for the purpose of an extension of the water-works mentioned in the complaint.

*W. B. Hornblower*, for the appellant.

*James W. Perry*, for the respondent.

VAN BRUNT, P. J.:

Were it not for the claims made by the appellants, because of the decision in the case of *Van Cott* v. *Van Brunt* (82 N. Y., 540), in which the principle that a purchase of property from a trustee by his *cestui que trust* is presumed to be fraudulent seems to have been disregarded, we should be entirely content to leave the disposition of this case upon the opinion written by the learned judge who heard the case in the court below.

There are various grounds upon which the decision in the case cited may be distinguished from the case at bar.  In the first place, in that case all the stockholders consented to the transaction, and it does not appear that, at the time of the transaction, there were any creditors of the corporation, or that there were any parties who could be affected adversely by this remarkable contract.  In the next place, as far as the issue of stock was concerned, the rights and obligations of the appellant corporation were very different from that of the corporation mentioned in the case cited, the one being a corporation formed under the general railroad act, and the other under the provisions of the general manufacturing act, the provisions in the two acts in relation to the issue of stock being essentially and fundamentally different.

The trustees of a company formed under the manufacturing act may purchase property necessary for their business, and issue stock to the amount of the value thereof in payment therefor, otherwise

the stock must be paid for in cash. This valuation of property must be a fair valuation, considering the purposes for which the property is to be used and the nature of the business, and although an honest over-valuation will not of itself subject the owners of stock to personal liability, yet where it appears that property, the value of which is well known and understood and capable of being ascertained, is purchased at a price far beyond its real value, this raises a presumption of fraud, and, unless rebutted by evidence explaining this apparent bad faith, the transaction is fraudulent in law and the holders of the stock are liable for the unpaid portion thereof.

In the case at bar the contract, the execution of which is sought to be restrained, provided for the issue of $50,000 of stock and $60,000 in bonds for property, the value of which was not over $65,000. It is true that it is sought to prove that for this stock and these bonds $65,000 would not be an inadequate price, but no such test can be applied. The stock must, at least, be treated as cash. Under the circumstances, it is clear that the stock which it is proposed shall be issued far exceeds, at its par value, the fair valuation of its proportion of the property to be purchased. It is urged, however, that the corporation has the power to sell its bonds at any price which it might see fit. It is true that there are many authorities which go to sustain, to a certain degree, this proposition. But no case has been cited where the sale of the bonds has been at such a low rate as would raise the presumption of fraud in the transaction. In the case at bar, assuming the stock to be taken at its par value of $50,000, it would leave these bonds to pay the balance of the valuation of this property, namely, $15,000, which would be an issuance of the bonds at the rate of twenty-five cents upon the dollar, and which would be secured by a mortgage upon the identical property sold. A transaction of this kind shows itself to be fraudulent upon its face, and it would require the clearest proof that a sale of bonds at twenty-five cents on the dollar, when the stock was taken at par, could be said to be made in good faith. A transaction of this kind, undertaken for the purpose of evading the statute, cannot be supported, and this construction of the contract is evidently resorted to for the purpose of such evasion. But it is claimed that as a majority of the stockholders of this corpora-

tion, including Mullins, consented to this arrangement, that, therefore, the ordinary rules applicable to such a transaction cannot be made available to the plaintiff upon the ground that in a corpora. tion of this description the minority of the stockholders have no rights which the majority need respect. It is undoubtedly true that such is the rule to a very great degree in such corporations. But, under its protection, the courts will not allow the majority to fraudulently deprive the minority of their rights. Although, in all matters of administration, the wishes of the majority must rule, yet where such administration tends to fraudulently deprive the minority of their rights and interests in the corporation the courts will interfere for their protection.

In the case at bar, as already suggested, the very transaction itself shows a fraudulent design, and no explanation has been given by the evidence offered which relieves the transaction of the conclusion necessarily forced upon us by its terms. The issuance of these bonds at twenty-five cents on the dollar, under the facts disclosed in this case, would be such a wanton waste of the property of this corporation as would call upon a court of equity to intervene for the protection of the stockholders who are not to profit by this extraordinary transaction.

The judgment must be affirmed, with costs.

Brady and Macomber, JJ., concurred.

Judgment affirmed, with costs.