DAVID C. VAN COTT, Receiver, etc., Respondent, *v.* JAMES A. VAN BRUNT, Impleaded, etc., Appellant.

Defendant, V. B., being the president and a director of the H. A. R. R. Co., as such president entered into a contract with C., by which the latter agreed to build and equip a portion of the road, for a certain sum in stock of the company and for a certain sum in its bonds. Immediately afterward, and in accordance with a previous arrangement, the contract was assigned by C. to V. B., who, with others associated with him, performed the contract at an expense less than the par of the stock and bonds agreed to be paid therefor, which they received. In an action by plaintiff, among other things, to recover of V. B., as the amount unpaid upon the stock, a proportionate share of the difference between the par. value of the stock so transferred and the cost of performance, it appeared that the contract was entered into and assignment made, in good faith, after full deliberation and consultation, with the knowledge and assent of all the directors and the stockholders of the company, as the only means to insure the construction of the road, and that the amount expended exceeded the actual value of the stock and bonds delivered in payment. *Held,* that the stock so transferred was to be considered as full paid-up stock, and that the action was not maintainable.

As to whether, had said defendant realized a sum beyond the amount actually expended, it would have inured to the benefit of the company, *quære.*

(Argued October 12, 1880 ; decided November 16, 1880.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment

in favor of plaintiff entered upon a decision on trial at Special Term.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Enos N. Taft* for appellant. A cause of action against a defendant on an implied contract to pay up the amount of stock held by him cannot be joined with a cause of action against him for damages for a violation of duty as director. (*Wooden* v. *Waffle*, 6 How. Pr. 145; *Hunter* v. *Powell*, 15 id. 221; *Flynn* v. *Bailey*, 50 Barb. 73.) If the contract is to stand, it must stand as it was made. (*Bell* v. *Day*, 32 N. Y. 165.) The foundation of the liability of the stockholders "was the agreement of the stockholders to pay the sums they had respectively subscribed to the capital stock." (Angell & Ames on Corp., § 602.) There is no debt existing against the corporation which the defendant should be called on to pay. (*Miller* v. *White*, 50 N. Y. 137, 144; *Wetherhead* v. *Allen*, 3 Keyes, 562; *McMahon* v. *Macy*, 51 N. Y. 155; 1 Craig's Special Proceedings, 230.)

*Benjamin G. Hitchings* for respondent. The defendant was rightly held liable as a holder of unpaid stock. (Angell & Ames on Corp., §§ 599, 600; *Slee* v. *Bloom*, 19 Johns. 456; 20 id. 699; *Briggs* v. *Penniman*, 8 Cow. 397; *Morgan* v. *N. Y. & Albany R. R.*, 10 Paige, 290; *Bogardus* v. *Rosendale Iron Co.*, 3 Seld. 147; *Wood* v. *Dummer*, 3 Mason's C. C. 108; *Dayton, Receiver*, v. *Borst*, 31 N. Y. 435; *Rankin, Receiver*, v. *Elliott*, 16 id. 377; *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139; *Tallmadge* v. *The Fishkill Iron Co.*, 4 Barb. 382, 392; *Upton, Assignee*, v. *Tribilcock*, 1 Otto, 45; *Sanger* v. *Upton*, 1 id. [91 U. S.] 60; Laws of 1854, p. 614, § 10; 1 R. S., tit. 3, part 1, chap. 18, § 5; Laws of 1850, § 1; 2 R. S., part 3, chap. 8, tit. 4, §§ 45–49.) Defendant having received certificates of all the stock and signed a receipt in the margin of the stock book, against each of the certificates which he took is liable. (*Upton* v. *Tribilcock*, 91 U. S. [1 Otto] 45; *Boynton*

v. *Hatch*, 47 N. Y. 225–231 ; *Boynton* v. *Andrews*, 63 id. 93 ; *Schenck* v. *Andrews*, 57 id. 146 ; *Tallmadge* v. *Fishkill Iron Co.*, 4 Barb. 383 ; *Sagory* v. *Dubois*, 3 Sandf. Ch. 466 ; *Slee* v. *Bloom*, 19 Johns. 456 ; *Brigham* v. *Mead*, 10 Allen, 215 ; *Buffalo, etc., R. R.* v. *Dudley*, 14 N. Y. 336 ; *Sanger* v. *Upton*, 1 Otto, 60.) Aside from the agency of the defendant himself in the transaction, a declaration or resolution of a board of directors that stock issued shall be. paid-up stock is void as against creditors. (*Upton* v. *Tribilcock*, 1 Otto, 48 ; *Sanger* v. *Upton*, id. 60 ; *Boynton* v. *Hatch*, 47 N. Y. 225; *Boynton* v. *Andrews*, 63 id. 93 ; *Schenck* v. *Andrews*, 57 id. 146; *Tallmadge* v. *Fishkill Iron Co.*, 4 Barb. 383 ; *Sagory* v. *Dubois*, 3 Sandf. Ch. 510 ; 8 Cent. L. J. 142.) The defend ant in this case is liable as a director and trustee, for convert ing and misappropriating the stock and bonds of the company. (*Robinson* v. *Smith*, 3 Paige, 222 ; *Cunningham* v. *Pell*, 5 id. 607, 612; *Bruff* v. *Mali*, 36 N. Y. 200, 205 ; *Tallmadge* v. *Fishkill Iron Co.*, 4 Barb. 383 ; 2 R. S., part 3, tit. 4, art. 2, § 33 ; 1 R. S., tit. 4, chap. 18, § 3.) Defendant is liable to the full amount unpaid upon his stock, and for the wrongful acts in which he participated, and cannot object that others are not brought in to share or lessen his liability. (*Bartlett* v. *Drew*, 57 N. Y. 587 ; *Wood* v. *Dummer*, 3 Mason's C. C. 308 ; *Cunningham* v. *Pell*, 5 Paige, 612 ; *Mayne* v. *Griswold*, 3 Sandf. 463.) If others are liable to contribution, defendant must seek it himself. (57 N. Y. 587.)

MILLER, J. The plaintiff, as receiver of the Hudson Ave nue Railroad Company, in his complaint claims to recover of the defendant Van Brunt, and one Slaght, as stockholders of said company, on account of unpaid stock held by them respectively. It is alleged that the defendant Van Brunt was president, director and principal manager, and Slaght a direc tor, of said company ; that the management of the corporation from the commencement was fraudulent and illegal toward the corporation and its creditors, and an accounting is asked of the assets, debts and liabilities, and of the stock held by said

defendants and the amounts unpaid thereon; also of the amount of the paid-up capital of the company, and of the debts incurred and owing by the company while the defendants were such directors. It is also demanded that the defendants, as stockholders, may be adjudged to pay up what is unpaid on their stock, or such amount as may be necessary to pay up the debts of the company, and that they may be compelled to pay the excess of debts incurred while they were directors, without their dissent, according to law, over and above three times the amount of capital actually paid up. The Special Term found, among other things, that defendant Van Brunt, who only appeals — the action having been discontinued as to Slaght, since the interlocutory decree — was the holder of 504 shares of stock, upon which the whole amount of the par value was never paid, and upon which no payments had been made, except that he, being president, made an agreement with one Cowperthwaite to build and equip a portion of the road for a certain sum in stock and for a certain sum in bonds, which contract immediately afterward was assigned to Van Brunt; that the stock and bonds were issued accordingly, and that Van Brunt and others associated with him built and equipped the portion of the road referred to, at an expense less than the amount in stock and bonds prescribed by the contract, and that said Van Brunt has ever since held 475 shares of said stock; that the contract with Cowperthwaite was not made with the intention of being performed by him, but of being transferred to the defendant Van Brunt; and that the arrangement was promoted by the said Van Brunt, as president and director of the company, with a view of enabling the latter, and persons who might associate with him, to build and partially equip a portion of the road and to receive stock and bonds of the company to an amount, at the par value thereof, greatly in excess of the actual amount which it would cost or which it was worth.

The court also found that the defendant Van Brunt was, at the time of the dissolution of the company, and has since been also, the holder of twenty-nine other shares of the stock of said company, no part of which had been paid, except twenty-five per

cent on two shares. It was further found that, during the defendant Van Brunt's administration as president and director, stock and bonds were issued to a large amount, and that a greater part of said stock and bonds were diverted from their legitimate use and disposed of by him, in violation of his duty as president and director. As conclusions of law, among others, the court found that the scheme or arrangement for building and equipping of the road was fraudulent against the company and its creditors; that the defendants, as holders of the unpaid stock, were only entitled to have credited, as a payment thereon, the actual outlay paid or incurred for the work and materials, and running stock or equipments, furnished by them in good faith, and held that the defendants were liable for the amount of the unpaid stock held by them.

The important question to be determined in this case is, whether the defendant Van Brunt was liable to pay for the stock held by him, for which he did not actually subscribe, at the par value thereof? Most of the stock was received under the agreement with Cowperthwaite to build and equip a portion of the road, and in consideration thereof. The right of the officers of a railroad corporation to enter into an agreement to build its road and pay for the construction of the same in stock or bonds cannot be seriously questioned, and contracts of this description are frequently made for such a purpose. In Ang. & Ames on Corporations (§ 590, *a*), it is laid down: " An agreement is often made by railroads to pay the persons building them a certain proportion of the contract-price in stock. Under such a contract the contractor is entitled to the proportion in stock *at its current market value* at the time payment should have been made. And if the stock depreciate so that it has no market value, the amount agreed to be paid in stock must be paid in money." (See *Hart* v. *Lauman,* 29 Barb. 410; *Moore* v. *H. R. R. R. Co.,* 12 id. 156; *Porter* v. *Buckfield Branch R. R.,* 32 Me. 539.) If a contract can be made to pay in part for building a portion of the road, it may also be made to pay for the whole thereof in like manner; and there is no valid ground for claiming that where the contractor is

entitled to stock at its market value, he would be liable for the difference between the market value and the par value thereof. There is no evidence in the record before us to establish affirmatively that the value of the work done and materials furnished was less than the fair and just value of the stock, or that the road built and equipped was worth less than said stock. In fact the testimony shows that the amount expended exceeded the actual value of the stock and bonds which were received in consideration of the same.

The evidence also established that the stock never had any market value whatever. It is true that some of the bonds were disposed of at fifty and sixty-five cents upon the dollar and less, and in some instances by throwing in stock to the same amount and one-half more, and in one instance taken at par in part payment of a debt; but they were intrinsically valueless, and after a while were sold for only a nominal sum, until at last no one outside of the company would take either the bonds or stock at any real price. The arrangement for the building of the road was made after full deliberation and consultation, with the knowledge and approval of all the directors and stockholders. It was assented to as the only means furnished, and the only offer which could be obtained from any one to insure the construction of the railroad. It was the best thing which could be done under the circumstances, was entirely satisfactory, and made, most clearly without any intention to defraud the company or its creditors, and in perfect good faith. It is difficult to see how creditors could be defrauded, when all the property which the company ever had remained in its possession and under its control. In view of the facts presented no sufficient reason appears why the stock held by Van Brunt and not subscribed for by him should be treated and regarded as full paid-up stock. It was evidently intended by the parties that it should not, and such was manifestly the agreement by which the stock was transferred in payment of the building of a portion of the road. If the rule be once established that no agreement can be made to build railroads by the transfer of stocks or bonds to the contractor, without rendering him liable

for the par value thereof, it would seriously interfere with the construction of enterprises of this description, and would prevent the building of many railroads.   We are unable to discover any reason why stock and bonds may not be transferred to a contractor to pay for the building of a railroad, where the contract is made in good faith and with no fraudulent intent, although such stock or bonds should prove to be worth even more than the amount allowed for the same.

It is claimed that the defendant, as president, director and trustee, having wrongfully appropriated the stock to himself without paying for it, takes all the obligations of a subscriber. This depends upon the question whether the transfer of the stock to the defendant and the application of the same was wrongful.   It was done, as we have seen, with the full approval of the stockholders, and in fact was a necessity, and without the contract entered into, no portion of the road could have been built.   If the defendant had realized a sum beyond the amount actually expended, there might have been, perhaps, some ground for claiming that the arrangement should inure to and for the benefit of the company.   As, however, this was not the fact, and no special advantage accrued to the defendant from the contract, and as there is no proof of any fraud, it is not apparent that there was any wrongful appropriation of the stock and bonds, or that the stock and bonds were diverted from their legitimate use.   The mere fact that the defendant held a certificate of the stock which was transferred to him did not make him liable, as it was to all intents and purposes *paid-up* stock. The cases of *Upton* v. *Tribilcock* (91 U. S. 45), and *Sanger* v. *Upton* (id. 56), and the other cases cited by the respondent's counsel, do not sustain the principle that in cases where stock has been transferred in good faith to pay a contractor to build the road, the certificate renders the holder liable to pay for the stock.   A number of cases are cited to sustain the position that the liability does not depend upon the subscription.   Without examining them, and conceding that this position may be correct, it cannot affect the question whether the owners of the stock and bonds which were transferred were liable to pay for

the stock as unpaid stock, when it had been disposed of as paid-up stock, for the purpose of building the road. Some cases are cited which involved a question as to the valuation of property received and work done in consideration of the transfer of stock. (See *Boynton* v. *Hatch,* 47 N. Y. 225 ; *The Same* v. *Andrews,* 63 id. 93 ; *Tallmudge* v. *Fishkill Iron Co.,* 4 Barb. 382.) All of these relate to the construction of the provisions of the general manufacturing act, and we think none of them are in point. Section 16 of chapter 282, Session Laws of 1854, which provides for the liability of stockholders for an amount unpaid on stock, is not, we think, applicable where the stock has been disposed of, in good faith and without fraud, to a contractor for building the road. Nor does section 5, 1 R. S., title 3, part 1, chapter 18, which was adopted by the railroad act (chap. 140, § 1, Laws of 1850) relate to any such case. So, also, the provision contained in 2 R. S. 465 (1 Edm. ed.), §§ 45–49, is equally inapplicable where the stock has been fairly appropriated. From the discussion had it follows that the court was wrong in its finding that the arrangement in regard to the contract and its transfer was promoted by Van Brunt as president, to enable him and his associates to build the road and to receive stock and bonds at the par value in excess of the amount which it actually cost or was worth. For the same reason the court erred in holding that the stock and bonds issued were diverted from the legitimate use of the company and disposed of by Van Brunt, in violation of his duty as president and director.

So, also, the conclusion of law was erroneous that the scheme was fraudulent as against the company and against the creditors, and that the defendants were only entitled to credit for the acttual outlay paid or incurred, and were liable for the amount unpaid on the stock. The result must be that the defendant was not liable to pay the par value of the stock received by him under the contract for building and equipping a portion of the road.

In regard to the twenty-nine shares which were held by the defendant Van Brunt, and which the court found had not

been paid for, except twenty-five per cent on two shares, it is not important to determine the extent of the defendant's liability on this appeal, as it is manifest that a new trial must be granted for the reasons already stated.

It is also insisted that the defendant is liable under the statute for allowing the debts to exceed three times the amount of the capital. (1 R. S. 602, § 3.) As the court decided against the plaintiff upon this question, and the interlocutory decree so declares, and as no appeal has been taken from that decision, we think it is not the subject of review. The other questions in the case, it is not important to consider, in view of the conclusions already arrived at.

While in equity the capital stock of a corporation is a fund for the payment of debts, and upon the dissolution of such corporation stockholders may be compelled to pay the amount unpaid upon the stock owned by them for the benefit of creditors, such stockholders can only be made liable where it is shown that the stock has been actually taken by them, or fraudulently received, and not where it has been delivered, in good faith and for an adequate consideration, by the corporation to the stockholder. We also think the case is properly presented for review upon this appeal.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except EARL, J., dissenting.

Judgment reversed.