WOOLFOLK, *Plaintiff in Error*, v. JANUARY.

### Division Two, December 17, 1895.

1. **Corporation:** STOCK : CONSTITUTION. A corporation may, under the constitution of this state, issue its stock or bonds, either for money paid, labor performed, or property received.

2. ———: ———: ———: FRAUD. A transaction by which property is given to a corporation in payment for stock is binding upon the stockholder and the corporation, unless it is impeached for fraud. (*Shickle v. Watts*, 94 Mo. 410, disapproved).

3. ———: ———: ———: ESTOPPEL. In an action charging defendant as stockholder to the extent of an alleged unpaid subscription, where the stock was received on a payment of property to the knowledge of plaintiff, and there was no evidence of fraud, *held*, that plaintiff was estopped from claiming that the stock was not fully paid up.

*Error to Vernon Circuit Court.*—HON. D. P. STRATTON, Judge.

AFFIRMED.

*T. K. Skinker* for plaintiff in error.

(1) Unless the plant received by the company under the arrangement of December 12 was fairly worth $80,000, the stock is not full paid and the stockholders are liable to creditors for the difference. Constitution of Missouri, art. 12, sec. 8; *Garrett v. Coal Co.*, 113 Mo. 337; *Liebke v. Knapp*, 79 Mo. 24; *Kehlor v. Lademann*, 11 Mo. App. 550; *Chouteau v. Dean*, 7 Mo. App. 210; *Shickle v. Watts*, 94 Mo. 410; *Bank v. Gallaher*, 43 Mo. App. 482. The burden of proof as to value was on defendant. *Camden v. Stuart*, 144 U. S. 104; *State v. Wood*, 13 Mo. App. 143; *Crandall v. Lincoln*, 52 Conn. 73; *Clapp v. Peterson*, 104 Ill. 26. (2) The transfer of the plant pursuant to the arrangement of

December 12 did not operate as payment of Roberts' and Irland's liability on the five hundred and ninety shares subscribed by them. *Schaeffer v. Ins. Co.*, 46 Mo. 248; Thompson on Stockholders, secs. 11, 106, 107; Beach on Receivers, sec. 513. (3) The rights and privileges conferred by ordinance number 37 should not be considered in determining the question to what extent, if at all, the stock was paid up. *Camden v. Stuart*, 144 U. S. 104; *Chisholm v. Forney*, 65 Iowa, 333; *Tasker v. Wallace*, 6 Daly, 364. (4) The words "full paid and nonassessable" in the stock certificates are no protection to the defendant. *Erskine v. Loewenstein*, 82 Mo. 301; *Burkinshaw v. Nichols*, L. R., 3 App. 1004; *Boulton Carbon Co. v. Mills*, 78 Iowa, 460; *Ins. Co. v. Floyd*, 74 Mo. 291; Thompson on Stockholders, sec. 135; 2 Thompson on Corporations, sec. 1680; *Henkle v. Mfg. Co.*, 39 Ohio St. 547; *Keystone Bridge Co. v. McCluney*, 8 Mo. App. 496; *Foreman v. Bigelow*, 7 Cent. L. J. 430; *Steacy v. Railroad*, 5 Dillon, 348. (5) He used no diligence to ascertain the truth, as was his duty. *Upton v. Tribilcock*, 91 U. S. 45; *Kitchen v. Railroad*, 69 Mo. 265; *Stephenson v. Smith*, 7 Mo. 617; *Roan v. Winn*, 93 Mo. 511; *Leavitt v. Laforce*, 71 Mo. 356; *McDaniel v. Harvey*, 51 Mo. App. 199; *Howe v. Agricultural Works*, 46 Ill. App. 85; *LeWarne v. Meyer*, 38 Fed. Rep. 191. (6) The price paid is a telltale. *Curd v. Lackland*, 49 Mo. 451; *Ames v. Gilmore*, 59 Mo. 549; *Morgan v. Wood*, 38 Mo. App. 260; *Douglass v. Ireland*, 73 N. Y. 100. (7) Defendant's failure to support his plea of belief with his own oath is fatal to his claim of innocence. *Hedrick v. Beeler*, 110 Mo. 91; *Baldwin v. Whitcomb*, 71 Mo. 651; *Cass County v. Green*, 66 Mo. 498; *Henderson v. Henderson*, 55 Mo. 559; *Goldsby v. Johnson*, 82 Mo. 605; *Leeper v. Bates*, 85 Mo. 228. (8) The alleged verbal transfer of the works to the directors on the

twelfth of October, gave them no title nor even possession. Black's Law Dict., "Livery of Seizin;" 2 Black. Com., side p. 315; *Rannells v. Rannells*, 52 Mo. 108; *Hughes v. Israel*, 73 Mo. 538. (9) Plaintiff's judgment against the company is conclusive on defendant. *Nichols v. Stevens*, 27 S. W. Rep. 613; *Glenn v. Williams*, 60 Md. 119; *Hawkins v. Glenn*, 131 U. S. 319; *Lewis v. Glenn*, 84 Va. 947; *Thayer v. Lithographic Co.*, 108 Mass. 523; *Came v. Brigham*, 39 Me. 35; *Milliken v. Whitehouse*, 49 Me. 527; *Wilson v. Stockholders*, 43 Pa. St. 424. (10) The statute of limitations (R. S. sec. 2782) is no defense to this action. *Hauser v. Thompson*, 56 Mo. App. 85; R. S. 1879, sec. 940; Gen. Stat. 1865, sec. 13, p. 370; R. S. 1855, sec. 22, p. 390; Thomp. on Stock., sec. 210; *Chouteau Spring Co. v. Harris*, 20 Mo. 382; *Miller v. Ins. Co.*, 50 Mo. 55; *Schricker v. Ridings*, 65 Mo. 214; *Cable v. McCune*, 26 Mo. 571; *Ochiltree v. Contracting Co.*, 54 Mo. 117.

*Burton & Wight* and *M. T. January* for defendant in error.

(1) Roberts and Irland sold the gas works to the corporation in payment of their subscription to the capital stock. They fixed the price. If there was an overvaluation they are responsible for it. They were estopped to assert the stock was not full paid. *Lloyd v. Preston*, 146 U. S. 630; Cook on Stock and Stockholders, sec. 39, page 35, and note. (2) Plaintiff in error purchased the bonds with full knowledge of the transaction between Roberts and Irland and the corporation. *First*. The recital in the bonds suggested an inquiry, which, if followed up, would have disclosed the fact of the estoppel against Roberts and Irland. *Second*. Plaintiff in error does not claim as an innocent purchaser of the bonds. "Under the circumstances of this case, if Mr. Woolfolk was ignorant his

ignorance may well be imputed to him as knowledge."
(3) Plaintiff in error then stands in the shoes of Roberts and Irland and he is likewise estopped to assert the stock is not full paid. (4) Notwithstanding there may have been error in the trial, the judgment is for the right party, on the question of estoppel and should be affirmed.

GANTT, P. J.—In this action plaintiff in error sought to charge the defendant as a stockholder of certain shares in the Nevada Gas and Coal Company, to satisfy a judgment obtained by plaintiff against said company. The proceeding is by motion for an execution against the defendant as holder of one hundred and one shares of the capital stock of said company. Plaintiff obtained judgment for $7,266.96 against the company. Execution issued and was returned *nulla bona*. Plaintiff averred that defendant's stock was wholly unpaid. Defendant denied that he owed any sum whatever on the stock.

For a second defense, the answer avers that plaintiff's judgment is founded on eighteen certain bonds of $1,000 each, made by the company and delivered to P. Roberts, D. H. Irland, and J. H. Andrews, in part payment of the purchase price of certain gas works and the properties and franchises thereto belonging, sold by said Roberts, Irland, and Andrews to said company; that the balance of the purchase price was five hundred and ninety paid-up shares in the capital stock of said company, which shares were issued and delivered to said Roberts, Irland, and Andrews, as fully paid and nonassessable and were so received by them, and it was understood and agreed by and between said company and said Roberts, Irland, and Andrews, that said bonds were to be a charge upon the property of the company only and not upon any of the shares of the capital stock; that afterward Roberts sold defendant the one

hundred and one shares sued on, being part of said five hundred and ninety shares, and at the time of the sale represented to defendant that said shares were fully paid and nonassessable, and the same so appears upon the certificates thereof, and defendant, so believing, purchased the same in good faith and for value; that plaintiff purchased the said eighteen bonds with full notice of the said alleged facts and is thereby estopped from maintaining this motion. For a third defense the answer avers that defendant purchased his shares for value and in good faith, believing that they were paid-up and nonassessable. For a fourth defense the answer avers that the debt upon which plaintiff recovered his judgment was not to be paid within one year from the time it was contracted. For a fifth defense the answer avers that said debt became due and payable on the first day of January, 1885, and suit thereon was not brought against the company until January 2, 1889.

The reply admits that the judgment was founded on the eighteen bonds as alleged, but denies that the five hundred and ninety shares were paid-up stock or were issued or delivered to said Roberts, Irland, and Andrews as fully paid and nonassessable or. were so received by them, or that it was understood and agreed between them and the company that the bonds were to be a charge upon the property of the company only and not upon the stock, or that Roberts and Irland represented to defendant that the one hundred and one shares sold to him by them were fully paid and nonassessable, or that defendant purchased the stock in good faith believing the same to be full paid and nonassessable, or that plaintiff purchased the bonds with notice of the alleged facts pleaded in the second defense. The reply further denies generally the third, fourth, and fifth defenses.

Besides this action against January there were pending at the same time and in the same court actions of the same kind by the same plaintiff against Joseph E. Harding, John A. Tyler, Michael Jordan, Thomas E. Stokes and Ed. J. Dickinson. By agreement of counsel for all the parties the cases, except that against Stokes, were all tried together, the evidence was taken in all together, they were submitted together, and the same bill of exceptions applies to all. The cause was heard by the circuit court and a finding and judgment for the defendants, and plaintiff sued out his writ of error.

From the record we gather that in 1882 D. H. Irland, of St. Louis, Preston Roberts, of Independence, and J. H. Andrews obtained from the mayor and city council of Nevada a franchise to construct gas works in said city and the exclusive privilege of laying the mains in the streets and alleys of said city for a period of twenty-one years. The ordinance limited the charge for gas for five years to $3.50 per thousand feet and after five years to $3 per thousand feet. The city was bound to use twenty-five lamps for five years at $30 per year per lamp, and each extension of three hundred and eighty feet bound the city to use an extra lamp at $25 per year.

Irland and Roberts paid Andrews for the franchise thus obtained between $1,200 and $2,000. Irland and Roberts then proceeded to, and did, erect the works and laid the mains in the streets. Irland and Roberts then became the promoters of a corporation to operate these gas works. At their instance articles for the company to be known as the Nevada Gas and Coal Company were drawn. The stock was divided into six hundred shares of the par value of $100 per share, and the association was organized under article 8,

chapter 21, Revised Statutes, 1879, entitled, "Business and Manufacturing Companies." The names and places of residence of the shareholders and the number of shares subscribed by each were given as follows: D. H. Irland, St. Louis, two hundred and ninety-five shares; P. Roberts, Independence, Missouri, two hundred and ninety-five shares; J. A. Tyler, of Nevada, five shares, and P. F. Thornton, Joseph E. Harding, Charles G. Burton, M. Jordan, and C. A. Rockwood, each one share. The articles recited the shares were *bona fide* subscribed, one half actually paid up in lawful money. The certificate of incorporation from the secretary of state bore date October, 1882.

At the meeting of the incorporators the articles were read, reciting the payment of one half cash, and thereupon Judge Burton, the attorney who had drawn the articles, at once said, "Gentlemen that recital is not true. No cash has been paid in." Whereupon Irland inquired, "Is it necessary that it should be paid in money?" To this Judge Burton answered, "No; the supreme court of this state has held it may be paid in property." Irland then said, "We have already paid over half of it in this way." "But," said the attorney, "that is your property and not the property of the corporation." Whereupon Irland said he would turn it over and stated there that from that time the board of directors had charge of it. It was the understanding of all present that the whole property belonged to Irland and Roberts and the ten shares subscribed by the others were to be given to them by Irland and Roberts. Irland, then, upon inquiry as to his reason for capitalizing the corporation at $60,000, said the plant alone had cost $34,000 and the franchise was for twenty-one years, and in a live, progressive city like Nevada made it very valuable. "These works," he said, "with the franchise will be worth from $80,000

to $100,000 the moment they are ready to operate;" that the Independence works paid six per cent on $100,000 and were not as good as these. With this explanation the corporators signed and executed the articles. The meeting was adjourned to December 12, 1882. On that day Irland, Roberts, and Andrews submitted the following proposition:

"*To the Stockholders of the Nevada Gas and Coal Company:*

"The undersigned hereby submit for your consideration and action the following proposition, viz.:

"We will sell and assign to said corporation all of our interest in the stock, gas works, pipes, real estate and fixtures thereto belonging, provided the stockholders of said corporation shall, by resolution, authorize and bind the board of directors to issue to J. S. Chick and E. K. Thornton, or bearer, of Kansas City, Missouri, twenty bonds, each for the sum of $1,000, due twenty years after date and bearing interest from date at the rate of six per cent per annum, which shall be payable semiannually at the banking house of Donnell, Lawson & Simpson in the city of New York, which said bonds shall be secured by first mortgage on said gas works and real estate and fixtures, and shall issue to us stock in said company amounting to the sum of $59,000.

(Signed)                      "D. H. IRLAND,
                                   "J. H. ANDREWS,
                                   "P. ROBERTS.

"Witnessed by E. E. KIMBALL."

On the same day the following resolution of acceptance was passed by the stockholders:

"*Resolved*, That we, the stockholders of the Nevada Gas and Coal Company, do hereby accept the foregoing proposition made to us by Messrs. D. H. Irland, J. H. Andrews and P. Roberts, and do hereby author-

ize, empower, and direct the board of directors of said corporation to issue said bonds for the sum of $20,000, and execute the first mortgage as specified in said proposition, which mortgage shall cover the gas works, machinery, pipes, outfit, properties, rights, franchises, liberties, privileges, and all tolls, incomes, rents, issues, profits and future extension and improvements now held or hereafter to be acquired; also to issue to said D. H. Irland, P. Roberts and J. H. Andrews stock to the amount of $59,000."

At the time of making the offer to sell the works and franchise to the gas company, Irland and Roberts were the sole owners thereof, and at the time the stockholders voted to issue bonds to the amount of $20,000 and stock to the amount of $59,000 in payment of the works Irland and Roberts were the owners of five hundred and ninety shares of the total number of six hundred subscribed and had given the remaining ten shares to the remaining stockholders, in order to enable them to become members of the corporation. Irland was secretary of the company.

In compliance with the proposition of Irland and Roberts and the resolution of acceptance, the corporation on December 13, 1882, issued the following certificates of stock, numbered 1 and 2, each, in the following form:

"SHARES FULL PAID AND NONASSESSABLE.

"United States of America, ⎤
"State of Missouri.          ⎦

"*Nevada Gas and Coal Company:*

"This certifies that D. H. Irland is entitled to two hundred and ninety-five shares of the capital stock in the Nevada Gas and Coal Company, transferable in

person or by attorney on the books of the company at their office in Nevada, Missouri.

"Witness the seal of said company and the signatures of the president and secretary, Nevada, Missouri, thirteenth day of December, 1882.

"J. E. Harding, President.
"D. H. Irland, Secretary."

Number 2 was in all respects similar save that the certificate contained P. Roberts' name instead of Irland's.

On the same day, December 13, 1882, Roberts and Irland sold to defendant January one hundred and one shares of said stock for $10 per share, and to J. A. Tyler one hundred and one shares for $10 per share, and to T. E. Stokes one hundred shares at same price. J. E. Harding and M. Jordan also purchased one hundred shares each, and E. Dickinson eighty-seven shares each at same price, of Irland and Roberts. Thereupon Irland and Roberts each assigned their two certificates for two hundred and ninety-five shares each back to the company and gave orders in this form to the company to issue to their assignees:

"Nevada, Mo., December 13, 1882.

"The president of the Nevada Gas and Coal Company will please deliver to M. T. January, one hundred and one shares of stock of the Nevada Gas and Coal Company, the same being a portion of the stock due us as per our proposition of sale made to said company.

"P. Roberts,
"D. H. Irland,
"J. H. Andrews."

Prior to the purchase of this stock, January, Stokes, Jordan, and Dickinson had not become stockholders in said corporation. The company thereupon

issued to each of said assignees the number of shares purchased of Irland and Roberts in certificates, stating on their face they were *"full paid and nonassessable,"* and countersigned by D. H. Irland, as secretary.

The bonds issued by the gas company in payment for its works and franchise contained the following recital on their face: "This bond is one of a series of twenty numbered consecutively from one to twenty, all of like tenor, date, and amount, secured by first mortgage upon the gas works of the said Nevada Gas and Coal Company, in the city of Nevada, together with its lands, gas works, machinery, pipes, properties, and franchises, which it holds under ordinance number 37 of the city of Nevada, etc., all of which said real and personal property is situated in Nevada, county of Vernon."

The company defaulted in payment of its interest, and a decree of foreclosure was obtained in the United States circuit court at Kansas City. Plaintiff testified that he purchased $10,000 of the bonds prior to the foreclosure, and the other $10,000 on the day of the sale of the works by the master in chancery. Upon being asked by counsel for defendants what he gave for the bonds, it was objected by his counsel that it was immaterial, and pending the decision, counsel for plaintiff stated: "We do not claim that Mr. Woolfolk' was an innocent purchaser of the bonds." Preston Roberts continued to own $5,000 worth of the bonds down to the day of the foreclosure sale, and sold them to plaintiff on that day.

It was admitted that the gas company never made any call on the stockholders for payments on their stock, and nothing was ever paid save as already stated by Roberts and Irland turning over the works and franchises in payment thereof.

The plaintiff prayed seventeen instructions, all of

which the court refused, and plaintiff saved his exceptions.   These will be noticed in the opinion.

At the instance of defendant the court gave the
following instruction: "If the court finds from the
evidence that Roberts and Irland sold the gas works
and franchise to the Nevada Gas and Coal Company, a
corporation of which they (Roberts and Irland) were
directors, in payment of their subscription for five
hundred and ninety shares of the capital stock of said
company, and in addition thereto, the bonds of said
company in the sum of $20,000, and that the stock held
by defendant January is a part of the stock so issued
to Roberts and Irland and purchased from them, or
either of them, then Roberts and Irland would be
estopped to deny that said stock was full paid, and if
the court shall further find that plaintiff's claim against
defendant is based on a judgment obtained on said
bonds against said gas company, and shall further find
that plaintiff is not an innocent purchaser of said
bonds, then the court declares the law to be that plaintiff is likewise estopped to deny that the stock of
defendant is full paid, and the finding will be for the
defendant." To this instruction plaintiff duly excepted.

The court then found for defendant and rendered
judgment accordingly, and plaintiff prosecutes his writ
of error therefrom.

The constitution of Missouri permits a corporation
organized in this state to issue its stock or bonds, either
for money paid, labor done, or property received.  Art.
12, sec. 8.   And it was held by this court in *Liebke
v. Knapp*, 79 Mo. 22, a case arising prior to the adoption of the constitution of 1875, that payment for stock
could be made by services rendered the corporation,
and it was said in that case that any other doctrine than
this would place a corporation at a disadvantage, under
a disability not contemplated by law; that a corpora-

tion unless prohibited by statute has a general capacity of contracting which the common law concedes to everyone ordinarily competent to enter into binding engagements. The doctrine thus announced has been often approved, both in England and in the United States.

Irland and Roberts, under a franchise from the city of Nevada, had constructed gas works and had laid their mains, and were about ready to commence supplying gas to the city under their contract. At this point they organized a corporation to manufacture and sell gas, and capitalized it at $60,000, to be divided into six hundred shares of the par value of $100 per share. They each subscribed for two hundred and ninety-five shares for themselves, and for services rendered gave Tyler five shares, and one share each to Thornton, Burton, Rockwood, Jordan, and Harding. Irland and Roberts owned the gas works and agreed in writing to sell them to the corporation for bonds of the company to the amount of $20,000 and stock to the amount of $59,000. They were practical gas men. There were no debts against the works. They represented to the other corporators that the works were well worth $80,000. That the Independence works were paying six per cent upon a valuation of $100,000, and were not as well built as the works they proposed to sell the corporation. Upon these representations the other stockholders joined Irland and Andrews in purchasing the works for the corporation at their written offer. The defendant January was not then a stockholder. The stock and bonds were issued to Irland and Roberts and the bonds secured by a deed of trust on the plant purchased by the corporation of Irland and Roberts. January afterward bought one hundred and one shares of the stock of Roberts, Irland, and Andrews, for $10 a share.

The contention of the plaintiff now is that this stock was not paid for by Irland and Roberts, and that their assignee January must be held for $10,100, the amount plaintiff claims is unpaid on his one hundred and one shares of stock.  In other words, the contract by which the corporation procured the gas works must be ignored and held for naught in this proceeding by a creditor who acquired the bonds of Roberts and Irland with full notice of the contract and after the corporation had defaulted in the payment of the bonds, a portion of them after a judgment of foreclosure of the mortgage securing them had been rendered.  The theory of the plaintiff is that the contract between the gas company on the one hand and Irland and Roberts on the other, is invalid because the works were not worth the $80,000 at which they were valued; that they were really not worth more than the bonds.

It is not charged that the assignees of this stock were guilty of a fraud upon any person, and it is plain that if anybody must suffer by the transaction the loss must fall upon them.  It is certain that neither of the present holders of the stock made any representation as to the value of the works, and there was evidence of the most trustworthy character that Irland and Roberts, who were interested in selling the stock and the plant, represented it as worth $80,000.  Had Irland and Roberts continued to be the owners of the judgment and bonds upon which this execution is based certainly there could be no doubt that as against these assignees to whom they sold this stock upon their representations of the value of the works they would be forever estopped from denying that it was paid up.  Having induced these assignees to purchase it under these circumstances we can conceive of no stronger grounds upon which to found an estoppel.  That contract was binding alike upon them and the corporation.

They were clearly estopped from saying that the corporation had not received full value for its bonds and stock, and certainly the corporation itself, in the absence of fraud, as against Irland and Roberts was estopped from saying the stock thus issued was not paid up. That a transaction by which property is given to a corporation in payment for stock is binding upon the stockholder and the corporation so long as it is not impeached for fraud we consider settled law.

In *Fogg v. Blair*, 139 U. S. 118, there was a contract between Blair and a railroad corporation by which Blair took stock and bonds for the construction of the road. The creditor charged that the work was not worth more than the bonds and that the agreement was only colorable and a means to get stock for nothing, and was a fraud on creditors, and prayed that Blair be compelled to pay par value for the stock. The court sustained a demurrer, saying "if, when disposed of by the railroad company, it was without value, no wrong was done to the creditors by the contract made with Blair and Taylor." To a like effect are the cases of *Clark v. Bever*, 139 U. S. 96, and *Handley v. Stutz*, 139 U. S. 417.

Unquestionably a simulated payment of subscription to stock is not valid as to creditors while the stock is in the hands of the original sharetakers, or their assignees with notice of the fraud, but in the very nature of things there must be a marked distinction between a fraudulent arrangement, and an honest transaction in which a corporation simply makes a disadvantageous sale of its stock, and between a proceeding against an original shareholder, and an assignee of stock against whom no notice of fraud in the issue of the stock is shown.

In *Bickley v. Schlag*, 46 N. J. Eq. 533, 31 Am. and Eng. Corp. Cases, 523, it is said: "The inquiry,

therefore, in the court below, should have been, whether the agreement in question was fraudulent or not; for, if the transaction was an honest one, the difference in value between the property constituting the consideration of the sale and the stock had no legal significance.  The charter of this company authorizes the corporation to exchange its capital stock for property, and, under that condition of things, a court of equity can not set aside a transaction of that kind simply on the ground that the bargain, on the side of the corporation, is a disadvantageous one.  In such affairs the company and the purchaser stand on the common footing of buyer and seller; the valuations of property in making the exchange, either on the one side or the other, can not be supervised or controlled by the court of chancery, for, in the absence of deceit, or some other corrupt constituent, the bargain between the parties can not be disturbed.  In the present instance fraud was not found, and the vice chancellor ordered these stockholders to pay more they had agreed to pay for the stock, on the ground that, in his opinion, the steamboats and other things they had exchanged were not worth as much as the stock was worth.  Conspicuously, the substance of the true issue has been overlooked.''

In *Coit v. Gold Amalgamating Co.*, 119 U. S. 343, the supreme court of the United States held that where full paid stock is issued for property received there must be actual fraud in the transaction to enable creditors of the corporation to call the stockholders to account.  A gross and obvious overvaluation would be strong evidence of fraud.  *Boynton v. Hatch*, 47 N. Y. 225;  *Van Cott v. Van Brunt*, 82 N. Y. 535;  *Carr v. LeFevre*, 27 Pa. St. 413; *Bank v. Alden*, 129 U. S. 372; *Du Pont v. Tilden*, 42 Fed. Rep. 87.

In *Shickle v. Watts*, 94 Mo. 410, it was said ''that

all agreements by the corporation. to pay more than such reasonable compensation will be disregarded and held for naught by the courts when the rights of creditors intervene. *And this is the case, even though no fraud be proven,"* and *Boynton v. Hatch,* 47 N. Y. 225, and *Tallmadge v. Iron Co.,* 4 Barb. 382, and other cases are cited as authority for the statement that even in the absence of fraud the courts would assume the prerogative of inquiring into the value of the property given for the stock and substitute its own judgment for that of the parties fairly agreed upon, if in their opinion the purchaser or subscriber had not given a sufficient consideration.

In *Van Cott v. Van Brunt,* 82 N. Y. 535, and *Boynton v. Andrews,* 63 N. Y. 93, and *Schenck v. Andrews,* 57 N. Y. 133, it was pointed out that the decision in 47 N. Y. 225 was a construction of the amendment of 1853 to the chapter on manufacturing corporations of 1848, which enabled such corporations to purchase property by issuing their stock *"to the amount of the value thereof"* in payment therefor" and was not authority for the position now assumed that a transaction by which a corporation sells its stock for work and labor done could be impeached even though no fraud be proven.

The *dictum,* then, in *Shickle v. Watts, supra,* to the effect that the consideration paid for stock may be disregarded in the absence of fraud, is disapproved as being unsupported by reason or authority.

Judge BRADLEY in the *Coit* case (14 Fed. Rep. 12) said: "It is not true that it is in the power of a creditor in every case, and in all cases, as a mere matter of right, to institute an inquiry as to valuation of the amount of the consideration given for the stock, and disturb fair arrangements for its payment in other ways than by cash. If the stock has been fairly created and

paid for, there is an end of trusts in favor of anybody; and this does not affect the general proposition that unpaid subscriptions of stock are a trust fund to be administered for the benefit of creditors after a corporation becomes insolvent.''

There is no doubt that the unpaid installments on a stock subscription are assets of the corporation to which creditors may look for the satisfaction of their claims but it must be obvious that the facts of this case present a different question. Here the corporation gave its stock and bonds for the gas works and mains and the franchise to supply the city with gas for twenty-one years. It not only issued the stock full paid and nonassessable on its face but the contract itself is utterly irreconcilable with the claim that the corporation itself could have assessed that stock as unpaid after receiving the property from the owners of the stock.

The courts, however, have recognized that a corporation and its stockholders might be guilty of a joint fraud upon *bona fide* creditors who give credit to the corporation in the belief that its stock is full paid. In such cases it will permit the creditor to maintain a creditors' bill against the stockholders for the deficiency, but the great weight of authority in this country is to the effect that in such an action it is essential to establish fraud and that the creditor must be one who in good faith gave credit in the belief that the stock was full paid or the stockholders were bound for the unpaid balance. *Whitehill v. Jacobs*, 75 Wis. 474; *Walburn v. Chenault*, 43 Kan. 352; *Phelan v. Hazard*, 5 Dill. 45; *Mallinckrodt Chemical Works v. Belleville Glass Co.*, 34 Ill. App. 404; *Knoop v. Bohmrich*, 49 N. J. Eq. 82; *Shickle v. Watts*, 94 Mo. 410.

Now, in this case, when the debt upon which the execution issued was created, there was no concealment of any fact. The proposition and acceptance were spread

upon the records of the corporation. Every stockholder and officer of the corporation was present. There were no existing creditors. The owners of the gas plant and franchise sold them to the corporation for its stock. The corporation bought the plant and issued its stock in payment. To treat this stock otherwise than as full paid under the circumstances would, in the language of Judge DILLON, be to refuse "to treat that as a payment which the parties have agreed should be payment." *Phelan v. Hazard*, 5 Dill. 45.

It is said in Thompson's Liability of Stockholders, section 134: "A corporation may take in payment of its shares any property which it may lawfully purchase. Such a transaction is not *ultra vires* or void, but is valid and binding upon the original sharetakers and upon the corporation, unless it is rescinded or set aside for fraud. While such a contract stands unimpeached, the courts, even where the rights of creditors are involved, will treat that as payment which the parties have agreed should be payment." *Brant v. Ehlen*, 59 Md. 1, and cases cited.

No attempt has ever been made to rescind this contract. All the parties to it have for more than ten years treated it as valid. Irland and Roberts, from whom plaintiff purchased his bonds, have never offered to rescind and by the sale of their bonds and stock have placed it beyond their power to do so. The plaintiff having bought in the plant has placed it beyond the possibility of the corporation to rescind if it desired to do so. The consideration for the plant was the bonds and stock. The stock was as much a part of that consideration as the bonds, and plaintiff can not hold on to the bonds and repudiate the stock as part of the consideration. To so hold in this case would perpetrate a fraud upon the assignees of this stock and not upon plaintiff who admits he is not an innocent purchaser

but took said bonds after the company had defaulted and a decree of foreclosure and sale had been rendered. *Bruner v. Brown*, 48 Am. and Eng. Corp. Cases, 474.

It is unnecessary upon the facts of this case to discuss the principles which would govern if there had been any fraud in the transaction or what attitude an innocent purchaser or creditor would bear to the holder of stock who had fraudulently obtained it. We feel bound to treat the stock as paid up and to hold that as the whole transaction was spread upon the records of the corporation, and plaintiff was not an innocent purchaser of the bonds, he stands in the same relation to this stock that Irland and Roberts did; that they were and are estopped from claiming the stock was not paid up, and plaintiff is likewise estopped. The judgment is affirmed. SHERWOOD and BURGESS, JJ., concur.