CLARA P. BOBB, Appellant, v, WALMAR THEATRE
  COMPANY, W. F. KIER, O. J. WILHELMI and
  ST. LOUIS UNION TRUST COMPANY, Execu-
  tors of PAUL GRIESEDIECK, and E. H. ELZE-
  MEYER, Respondents.

St. Louis Court of Appeals.   Opinion Filed February 8, 1921.

1. **CORPORATIONS: Capital Stock: Property Turned Over Instead of
   Cash: Must Equal Value Placed: Stock Subscriptions Unpaid: Trust
   Fund for Creditors.** Unpaid subscriptions on capital stock of a
   corporation constitute a trust fund for the benefit of creditors, and,
   whilst incorporators may turn over property instead of cash in
   payment of stock, that property must be fully equal to the value
   placed upon it, and its value is determined by the fact, and not by
   the opinions of the persons turning it over, even though they may
   have honestly believed it to be worth the amount certified.

2. ———: ———: **Stock Subscriptions Unpaid: Only Creditors Ex-
   tending Credit on Faith of Paid Up Capital Stock Can Complain.**
   Only those creditors who extended credit on the faith of the capi-
   tal stock being paid up, and without knowledge of the fact that the
   corporation had accepted property in payment of the stock, can
   hold the original incorporators liable in a suit for the difference
   between the real value of the property that was turned into the
   corporation and the face value of the stock they received.

3. ———: ———: ———: ———: **Lessor of Corporation Not a Credit-
   or Extending Credit on Faith of Paid Up Capital Stock.** A lessor
   who became an involuntary creditor of a corporation by reason of
   a previous lease to another corporation, did not deal with the sub-
   sequent corporation on the faith of its capital stock being paid up,
   either in money or property, inasmuch as at the time the lease
   contract was made the corporation was not even in existence, and
   *held*, that the lessor had no right to complain.

Appeal from the Circuit Court of the City of St. Louis.—
         *Hon. William T. Jones*, Judge.

AFFIRMED.

*Thos. J. Rowe* and *Henry Rowe* for appellant.

(1) The stock of the Walmar Theatre Company must have been actually paid for either in cash or in property. If it was not, the stockholders, Kier, Griesedieck and Elzemeyer are liable for the amount of their unpaid stock. Sec. 1, Act of April 12, 1911, Laws of Missouri 1911, page 149; Berry v. Rood, 168 Mo. 316, and cases cited. (2) The appellant had a right to assume that the capital stock of the Walmar Theatre Company had been fully paid in money or its equivalent in property. Van Cleve v. Berkey, 143 Mo. 109; Berry v. Rood, 168 Mo. 316, and cases cited. (3) A judgment creditor is not bound by the statement of the articles of agreement as to the value of the stock, but may show that the property received in payment of stock was not of the value stated, and persons dealing with a corporation have a right to assume in the absence of actual knowledge to the contrary that the stock is fully paid for in money or money's worth. Rogers v. Mining Co., 185 Mo. App. 1. c. 674. (4) The evidence in this case conclusively establishes that the stock issued to Kier, Griesedieck and Elzemeyer was not actually paid for at its par value in property of the cash value equivalent to the par value of the stock; that the property with which they attempted to pay for the stock was of no value. (5) In view of the facts in this case, the contention that if the indebtedness of the Walmar Theatre Company to respondents on account of the sale to the former by the latter of the worthless leaseholds is in excess of the capital stock of said company, repondents are absolved from liability therein, is without merit.

*Anderson, Gilbert & Hayden* for respondents.

(1) The stock was fully paid up. The property which went to pay it up had actually cost in cash more than the amount for which it was put in the articles of association. The claim of the appellant that the property was not

worth anything is based solely on the opinion that the ground rents' were too high. In this view other people differed. Where question of value is determined by question of opinion and judgment is honestly exercised, there is no further liability, although the property subsequently turns out not to be worth what it was put at. Coit v. Company, 119 U. S. 345; Bank v. Alden, 129 U. S. 379; Colburn v. Ramsdell, 110 Ind. 417; Walburn v. Chevault, 43 Kan. 352; Phelan v. Hazard, 5 Del. 45; Penfield v. Gas Co., 57 Nebr. 231; Proctor Co. v. Cook, 103 Ky. 96, 44 S. W. 391. And the question of value is to be determined on the appearances at the time of issue of the stock and not after the corporation has become insolvent. Even where notes are taken that are supposed to be good but subsequently become worthless, there can be no claim that the stock was not paid up. Beebe v. Hatfield, 67 Mo. App., 615, 616; Finletter v. Acetylene Co., 215 Pa. 86; Young v. Eric Co., 85 Mich. 112. The amount bid at foreclosure. does not determine the value. Mo. Pac. v. Boyd, 228 U. S. 507. (2) The plaintiff did not render credit to the defendant Walmar Theatre Company on the strength of its capital stock and, therefore, does not come within the class of creditors dealt with in the cases cited by appellant. Berry v. Rood, 168 Mo. 333, 334; Woolfolk v. January, 131 Mo. 620. (3) As the corporation owed the stockholders more than the amount of their subscriptions there can be no recovery. Powder Co. v. Lead Co., 134 Mo. App. 186, 187; Stinebaker v. Restaurant Co., 133 Mo. App. 254, 255; Bank v. Bank, 130 Mo. 169. (4) A demand cannot be split and a suit for a part bars the claim for balance. Union Co. v. Traube, 59 Mo. 355.

BIGGS, C.—This is a direct proceeding in equity in the nature of a creditor's bill by a creditor of a corporation to recover against individual stockholders an amount said to be due and unpaid an their stock subscriptions. Plaintiff seeks to have satisfied her claim against the corporation, a part of which has been reduced to judgment in a prior suit, and which judgment was shown to be uncol-

lectible, as was evidenced by a *nulla bona* return of the sheriff under execution.

The defendants named in the bill are Walmar Theatre Company, a Missouri corporation, and W. F. Kier, Paul Griesedieck, and E. H. Elzemeyer, subscribers to the capital stock of that company.

Upon a hearing before the circuit court, there was a decree for defendants, from which plaintiff appeals. Pending the appeal in this court Paul Griesedieck died, and his executors, O. J. Wilhelmi and St. Louis Union Trust Company, have entered their appearance in the cause.

In March, 1911, plaintiff was the owner of a lot of ground with improved buildings thereon, known as Numbers 15 and 17 South Sixth Street, in the City of St. Louis. Albert S. Block was the owner of the adjoining property, known as 19, 21 and 23 South Sixth Street, and one Julius Gates was the owner of a lot fronting on Walnut Street, which adjoined the lots of plaintiff Bobb and Block at the rear.

At about the same time, in the spring of 1911, plaintiff, Block, and Gates, executed leases on their respective properties to the Crawford-Talbot Theatre Company, a Missouri corporation (herein called the Talbot Company). By the terms of the leases the lessee was obligated to pay taxes in addition to rent, and by the three leases there was a total obligation on the part of the Talbot Company of about $20,000 per year in rent and taxes. The leases ran for twenty years, and by their terms the lessee was given the right to alter, add to, or remodel the buildings on the property, so as to make the same a theatre building in accordance with the ordinances of the city of St. Louis then in force. In the Bobb lease the lessee had the right to take out the south wall of the building along the southern line, but was obligated at the end of the term to restore and rebuild the said south wall. Also by its terms the lessee had the right to assign or sublet the whole or any part of the premises without the written consent of the lessor, but in such

event the lessee should not be released from the performance of the covenants and obligations of the lease in any particular. At the end of the term the lessee was to restore the premises to the lessor in as good condition as when received, excepting natural wear and tear, and excepting the alterations made by the lessee. It was further provided that all theatre furniture and furnishings placed in the building should be and remain the property of the lessee, and at the termination of the lease or its forfeiture for any cause, the same might be removed by the lessee.

Thereafter the Talbot Company took possession of the property, and in 1912 expended about $220,000 in alterations and improvements, and started the operation of a theatre known as the "Hippodrome." The defendants, Kier, Griesedieck, and Elsemeyer were interested in the Talbot Company as stockholders and were also induced to indorse the notes of that company to the extent of $60,000, which notes were secured by deed of trust on the entire interest of the Talbot Company in the properties and improvements.

Although it appears from the evidence that the Talbot Company had a gross revenue from the theatre operated by it of five or six thousand dollars per week, yet it was not a financial success, and by 1915 had become absolutely insolvent and unable to meet its obligations; but it appears that the ground rent as provided in the lease was paid, although the plaintiff had considerable difficulty at times in collecting the rent from the Talbot Company.

In June, 1915, the individual defendants, Kier, Griesedieck, and Elsemeyer having indorsed the notes of the old Talbot Company to the extent of $60,000, which were held by the American Trust Company and which were secured as stated by deed of trust on the property, after having taken up said notes, caused a sale to be held under the deed of trust, and the defendant Griesedieck purchased all of the property of the old Talbot Company ·

at public sale for the sum of $1,000. At the time, Griesedieck was acting for himself and the other defendants, Kier and Elsemeyer.

Thereupon the three individual defendants incorporated the present defendant, Walmar Theatre Company, with a capital stock of $90,000. Defendant Kier subscribed for 450 shares; Griesedieck for 360, and Elsemeyer for 90, making a total of 900 of the par value of $100 each. The incorporators paid for the stock by causing to be transferred to the company the three leaseholds referred to, known as the Bobb, Block, and Gates leases, together with the improvements on the property, including all buildings, fixtures, etc. All of this property was put into the corporation at a valuation of $165,000, $90,000 thereof to pay up the capital stock, and the remaining $75,000 was distributed to the three defendants in the form of notes of the corporation secured by mortgage on the property. No cash was put into the new company.

Thereafter the individual defendants were elected officers and directors of the company and proceeded to manage the theatre, with the result that between June, 1915, and January 1, 1916, defendant W. F. Kier advanced to the company the sum of $9316.03 in cash; the defendant Paul Griesedieck $7498.19, and the defendant Elsemeyer $762.85, in order to keep the corporation alive and its obligations paid, including the ground rent which, as stated, with the obligation to pay taxes under the leases, amounted to about $20,000 per year. It appears also that during said period the new Walmar Theatre Company lost about $8,000.

Plaintiff's rent was paid up to January 1, 1916, but the lessee, Walmar Theatre Company, failed to pay the January and February, 1916, rent, and also failed to pay the taxes for the year 1915, which became delinquent January 1, 1916. In March, 1916, all the leases were forfeited, and plaintiff by process of law ousted the defendant, Walmar Theatre Company, from possession,

and at the same time recovered the sum of $250 as damages for unlawful detention. Just prior to the forfeiture of the leases, the lessee, Walmar Theatre Company, sold the chairs, furniture and fixtures in the property as junk for the sum of $1600. Plaintiff afterwards recovered judgment on account of rent for the months of January and February, which judgment remains unpaid, although execution was duly issued as is evidenced by *nulla bona* returns of the sheriff.

In April, 1916, the plaintiff was compelled to pay the taxes, which the lessees were obligated to pay under the terms of the lease, to the extent of $2351.05. The total claim of plaintiff on account of rent, taxes, etc., amounts to the aggregate sum of $4413.95.

Plaintiff's theory of right of recovery is based on the allegation that the leasehold estates with the improvements thereon which were put into the corporation to pay for its capital stock, were of no value; that they were not assets, but were liabilities, and that no part of the capital stock of the said Theatre Company was ever paid by the defendants or by any one either in cash or in property; that the subscribers to the capital stock of said Theatre Company, the individual defendants, never paid any part of such capital stock of $90,000, either in cash or in property, and that the full amount of such stock now remains wholly unpaid; that the statement made in the articles of incorporation that said capital stock was actually paid up in property, was falsely and fraudulently made for the purpose of making it appear that the capital stock of said Theatre Company had been actually paid up in property.

The first inquiry in these stock subscription cases should be to ascertain the status of the plaintiff creditor with the view of determining whether plaintiff is in such a position that he or she may have the right to call upon defendants to pay up their unpaid stock subscriptions. If the present plaintiff does not come within the class of creditors that have that right, then she cannot recover,

and the question of whether defendants subscriptions were in fact paid or unpaid becomes immaterial, as do all other questions presented by the record, such as whether plaintiff has split her demand and can only recover a part of her claim on that account, and also whether defendants possess a valid set-off against their stock liability.

By a long line of decisions the trust fund theory and the true value theory prevails in Missouri.

In Meyer v. Mining Company, 192 Mo. 162, 1. c. 189, 90 S. W. 821, after a review of the authorities, it is said: "The rule in this State, therefore, is that unpaid subscription on capital stock of a corporation constitute a trust fund for the benefit of creditors, and that whilst incorporators may turn over property instead of cash in payment of stock, that property must be fully equal to the value placed upon it, and its value is determined by the fact and not by the opinions of the persons turning it over, even though they may have honestly believed it to be worth the amount certified."

That only such creditors who extend credit to the corporation on the faith of its capital stock being paid up can complain of the fact that it is unpaid, is the established rule in this State as will be noted from the following quotations:

"So, too, it is good law that underlying the trust-fund theory and the true-value theory is the proposition that creditors have the right to assume that stock has been fully paid in money or money's worth as set forth and to extend credit on the faith of such assumption, but because of this underlying proposition it follows that if a creditor of an insolvent corporation did *not* extend credit on the faith of the shareholders having paid their stock subscriptions in money or money's worth, but, to the contrary, *knew* at the time of the creation of the corporate debt that such stock was paid for in simulated values, he is not entitled to the remedy here sought." solemnly in the articles of association of a corporation

[Trust Company v. McMillan, 188 Mo. 547, l. c. 567, 87 S. W. 933.]

In the case of Berry v. Rood, 168 Mo. 316, 62 S. W. 644, after laying down the rule of stock liability and holding that the original incorporators were liable in the suit for the difference between the real value of the property that was turned into the corporation and the face value of the stock they received, it is said that such liability only applies to creditors who extended credit on the faith of the capital stock being paid and without knowledge of the fact that the corporation had accepted the property in payment of the stock. The Court says, l. c. 333: ''What is above said in regard to the rights of creditors is based on the idea that they gave credit to the concern on the faith of the showing that it had a capital stock of $300,000 which was fully paid.''

In Woolfolk v. January, 131 Mo. 620, 33 S. W. 432, it is said: The courts, however, have recognized that a corporation and its stockholders might be guilty of a joint fraud upon bona-fide creditors who *give credit to the corporation in the belief that its stock is full paid.* In such cases it will permit the creditor to maintain a creditor's bill against the stockholders for the defiency, etc.'' (Italics ours)

In Van Cleve v. Berkey, 143 Mo. 109, l. c. 135, 44 S. W. 743, the right of the creditor to recover is confined to such creditors as extend credit to the corporation on the faith of its capital stock being fully paid as required by law.

In 14 Corpus Juris, 999, the rule is stated thus: "Where the liability is based either upon the trust-fund doctrine, or upon the ground that such an issue of stock is a fraud upon creditors who deal with the corporation on the faith of its capital stock being paid up or secured to be paid in full, the liability arises in favor of those creditors only who are within the equity and reason of the rule.''

From the foregoing it will be noted that the whole doctrine that the capital stock of a corporation is a trust fund for the benefit of creditors is based upon the equitable proposition that the issue of so-called "watered stock," or stock with inadequate value back of it, is a legal fraud upon creditors, but *only* such creditors who contract with the corporation relying upon the fact that the professed capital was in fact paid in full either in cash or money's worth. While the creditor in dealing with the corporation has a right to assume that its capital stock is actually paid up, where it appears that such creditor placed no reliance on such fact, the reason for the rule does not exist, and the rule itself ceases to apply.

Under the foregoing principles and decisions, how stands plaintiff in the present case? She leased her property to the old Talbot Company, relying upon it to pay her rent and taxes. She gave to it a right to assign the lease without her consent, but reserved in her contract the right to look to it in such event for the performance of the obligations of the lease. Afterwards the defendant Walmar Theatre Company became obligated to perform the lease obligations by reason of the assignment of the leases by defendant Paul Griesedieck, who had purchased the leasehold interests at foreclosure sale.

While there is no evidence that plaintiff had knowledge of the manner in which the stock of the Walmar Theatre Company was paid, it is clear that she did not extend credit to that company on the faith of its capital stock being paid either in money or money's worth. It made absolutely no difference to plaintiff whether the capital stock of that company was two thousand or two million dollars. At the time her contract was made the company was not even in existence. She became an involuntary creditor of that corporation by reason of her previous agreement with the Talbot Theatre Company, and did not deal with the Walmar Theatre Company on the faith of its capital stock being paid either in money or property.

The record discloses facts showing that the plaintiff has no right to complain. It is for this reason recommended that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of BIGGS, C., is adopted as the opinion of the court.

The judgment of the circuit court is accordingly affirmed. *Reynolds, P. J., Allen* and *Becker, JJ.,* concur.