WHITEHILL, Respondent, vs. JACOBS and others, imp., Appellants.

*December 12, 1889 — January 7, 1890.*

*Corporations: Stock issued in consideration of property: Liability of stockholders: Patents: Assignment.*

1. Inventions for which patents have been applied for, and the prospective patents, are "property," within the meaning of sec. 1753, R. S., in consideration of which stock may be issued.

2. An agreement by which an inventor assigns to other persons part interests in prospective patents and all agree to assign the patents, when issued, to a corporation organized by them, and the assignment of such agreement to the corporation, vest in the corporation the whole beneficial interest in the patents.

3. Where full paid stock is issued for property received by the corporation, the holders thereof cannot be charged with a debt of the corporation on the ground that such stock was not in fact fully paid, unless there was actual fraud in the transaction and the credit was given to the corporation in the belief that its stock was fully paid.

APPEALS from the Circuit Court for *Milwaukee* County. The action is in the nature of a creditor's suit, brought by the plaintiff (who is a judgment creditor of the defendant the Jacobs Electric Company), after execution on his

judgment had been returned unsatisfied, to enforce pay-
ment of the judgment. It was brought in behalf of the
plaintiff and all other creditors of that company who should
elect to become parties to it. The company is an insolv-
ent corporation, and the plaintiff is a stockholder in it.
The other stockholders, together with the company, are
the defendants in the action.

The complaint alleges that the defendants *Jacobs* and
*Murphey* (two of the promoters and original stockholders
of the corporation) have not paid the par value of their
stock. The relief demanded is that an account be taken of
the assets and debts of the company; that a receiver of
such assets be appointed; and that *Jacobs* and *Murphey* be
held liable to pay to the receiver the full par value of their
stock, for the benefit of the creditors of the company. The
complaint seems to have been drawn in accordance with
the views and suggestions of this court in *Adler v. Mil-
waukee P. B. Mfg. Co.* 13 Wis. 57.

It appeared on the trial, and the court found, that the
defendant corporation was duly organized by the defend-
ants *Jacobs* and *Murphey*, and one Lennox, for the manu-
facture and sale of certain electrical apparatus, invented by
*Jacobs*, to regulate the temperature of rooms heated by
furnaces, for which applications for patents had been made
by *Jacobs*, and which patents were afterwards granted.
*Jacobs* assigned a one-half interest in such prospective pat-
ents to *Murphey* and Lennox, and the three agreed to as-
sign the patents, when issued, to the corporation. Such
agreement was assigned to the corporation, but the patents
have not been so assigned. Soon after the organization of
the corporation, Lennox assigned his stock to *Jacobs*, with
the consent of *Murphey*, and *Jacobs*, with like consent, as-
signed it to the defendant *Weil.*

The capital stock of the corporation was fixed at $100,000,
and nothing was ever paid for the stock, except the trans-

fer to the corporation of the equitable title to such patents, by means of the assignment to it of the agreement in respect thereto between *Jacobs*, *Murphey*, and Lennox. Certificates for the whole of the stock were issued to *Jacobs*, *Murphey*, and Lennox,— one half to *Jacobs*, and one fourth to each of the others. Immediately thereafter *Jacobs* transferred forty shares thereof — or $4,000, par value — to the plaintiff, who still holds the same. The demand of the plaintiff against the corporation accrued after he thus became one of the stockholders therein. The court found that such inventions and prospective patents were not valued by the defendants *Jacobs*, *Murphey*, Lennox, and *Weil* at more than $50,000 when the same were assigned to the corporation, or when the corporation was organized; also that all the stockholders, when they became such, had notice of all the foregoing facts. There is no charge of actual fraud in the complaint or findings against any of the stockholders.

The pleadings and the findings of fact and conclusions of law are very elaborate and voluminous, but the judgment of this court goes upon grounds which render it unnecessary to state them more fully.

The judgment appoints a receiver of the assets of the insolvent corporation, with the usual powers; requires the defendant *Jacobs* to assign to him such letters patent, and directs the receiver to sell such assets, including the patents, and to convert the same into cash. It also appoints a referee to ascertain the amount of debts owing by the corporation, and adjudges each stockholder liable up to fifty per cent. of the par value of his stock, to pay his *pro rata* share of the indebtedness which shall remain unpaid after applying thereto the proceeds of such assets. Costs are awarded against "the defendant," but no one of the defendants is named.

The defendant *Murphey* appeals from so much of the

judgment as holds him liable as a stockholder for the indebtedness of the corporation; also from the judgment for costs. The defendant *Jacobs* appeals from the same personal liability clause; also from the portion which requires him to assign the letters patent to the receiver. The defendant *Weil* appeals from the personal liability clause alone. Each has appealed separately.

*D. S. Rose*, for the appellant *Jacobs*.

For the appellant *Murphey* there were briefs by *Fr. Bloodgood*, and oral argument by *N. S. Murphey* in person. They argued, among other things, that in actions like this, where full paid stock is issued for property, the plaintiff must prove, as a condition of recovery, that there was actual fraud in the transaction. Cook, Stock, secs. 34, 44, 47, 48; *Coit v. North Carolina G. A. Co.* 14 Fed. Rep. 12; *Coit v. Gold A. Co.* 119 U. S. 343; *Bank v. Alden*, 129 id. 372; *Lake Superior Iron Co. v. Drexel*, 90 N. Y. 87; *Anderson's Case*, L. R. 7 Ch. Div. 75; *Currie's Case*, 3 DeG., J. & S. 367; *Van Cott v. Van Brunt*, 82 N. Y. 535; *Coffin v. Ransdell*, 110 Ind. 417; *Brant v. Ehlen*, 59 Md. 1. The stockholder cannot be made liable for the value of the stock less the real value of the property. Cook, Stock, sec. 47; *Phelan v. Hazard*, 5 Dill. 45; *Douglass v. Ireland*, 73 N. Y. 102; *N. H. Horse Nail Co. v. Linden Spring Co.* 142 Mass. 355; *Schenck v. Andrews*, 57 N. Y. 133; *Boynton v. Andrews*, 63 id. 93. A contract tainted with fraud is void *in toto*, and must be rescinded *in toto* if at all.

For the appellant *Weil* the cause was submitted on the brief of *Turner & Timlin*.

For the respondent there was a brief by *Stark & Sutherland*, and oral argument by *Geo. E. Sutherland*. They contended, *inter alia*, that *Jacobs*, Lennox, and *Murphey* were the original subscribers for all the capital stock of the corporation, and that Lennox having been released by *Jacobs* and *Murphey* and his interest transferred back to them, they

then and thereby became the original subscribers to the whole of the capital stock. Cook, Stock (2d ed.), secs. 52–54; 1 Lawson, Rights, sec. 435. The trial court has found that *Weil* stepped into the place of Lennox, and so in effect became an original subscriber; and the proof sustains the finding. It follows that *Jacobs, Murphey,* and *Weil* are liable upon the contract of subscription to the capital stock, which has never been fulfilled by paying for the stock. The defense that the stock was fully paid for by the attempt to turn in property has failed because: (1) No property has ever been turned into the company for its stock. (2) If the patents had been obtained and turned in to the company, they are not property. (3) If the patents could be considered property, they are not of definite or sufficient value to make the transaction a payment in full for the stock, or a payment in good faith. The stock must be actually paid for. No mere nominal or pretended payment is valid as against the creditors of the corporation. *Crawford v. Rohrer,* 59 Md. 604; *Sawyer v. Hoag,* 17 Wall. 610; *Marshall Foundry Co. v. Killian,* 99 N. C. 501; *Scovill v. Thayer,* 105 U. S. 143; *Weatherbee v. Baker,* 35 N. J. Eq. 501. "If the property received is grossly unequal in value to the par value of the shares, the shareholder who received the shares originally, or his subsequent transferee with notice of the circumstances, may be compelled to make up the difference in value in a suit brought by or on behalf of the persons injured thereby." *Boulton Carbon Co. v. Mills,* 43 N. W. Rep. (Iowa), 290; *Schickle v. Watts,* 94 Mo. 410; *Douglass v. Ireland,* 73 N. Y. 100; *Weatherbee v. Baker,* 35 N. J. Eq. 513; *Boynton v. Andrews,* 63 N. Y. 93. The better line of authorities hold that it is not necessary to claim actual fraud, and even the New York courts do not uniformly go to that extent. *Blake v. Griswold,* 103 N. Y. 429. If the company has not received property reasonably worth the par value of the stock the

original subscribers are liable. The rights of the plaintiff in equity are not affected by the fact that he is also a stockholder. Cook, Stock, sec. 226; Thompson, Liab. of Stockholders, sec. 263; *Perkins v. Sanders*, 56 Miss. 733.

LYON, J. The statute under which the defendant corporation was organized authorizes the issue of the stock of the corporation in consideration of labor or property as well as money, but requires that such labor or property shall be estimated at its true money value, and the same must be actually received by the corporation. R. S. sec. 1753. We cannot doubt that the inventions by *Jacobs* of his electrical apparatus, for which he had applied for letters patent, and the prospective patents, were *property*, within the meaning of the above statute; and that his assignment of an interest therein to *Murphey* and Lennox, their agreement to assign the patents, when issued, to the Jacobs Electric Company, and the assignment of such agreement to that corporation, vested in the corporation the equitable title to the patents which were afterwards issued to *Jacobs*. Had such agreement and assignments been recorded in the patent office before letters patent were issued, it is probable the same would have issued to the corporation as assignee. It seems clear, therefore, that the corporation is the owner of the whole beneficial interest in the patents,— *Jacobs* only holding the naked legal title thereto for its use and benefit,— and hence that he ought to surrender such title to the receiver for the benefit of the creditors of the corporation. We cannot see how any equities between *Jacobs* and the other stockholders of the corporation, or the fact that the plaintiff is one of the stockholders, can change the result.

The question discussed in each of the appeals is whether, under the circumstances of the case, the defendant stockholders are, or either of them is, liable for the indebtedness

of the corporation remaining unpaid after its assets shall be exhausted. No other creditor of the corporation has elected to be made a party to the action, and it does not very clearly appear that the corporation has any creditors besides the plaintiff and certain other of its stockholders. *Jacobs* names two possible creditors besides himself, but does not state the amount of their demands. The court found, in effect, that all the stockholders were chargeable with notice, and had actual notice when they took their stock, that no consideration was paid therefor beyond the assignment to the corporation of the inventions and prospective patents above mentioned, except certain advances made by *Murphey* and Lennox for the benefit of the company. The evidence is conclusive that such advances were not made on account of stock, but as loans to the company, to be repaid. This appears in the agreement between *Jacobs, Murphey*, and Lennox, of the existence of which the court found the plaintiff had notice before he gave credit to the company. That agreement provides that such advances shall be a credit to the corporation, to be repaid out of the first net avails of sales of machines, etc. The finding must therefore be taken to be that all of the stockholders took their stock with notice that no consideration had been paid the corporation for its stock other than the assignment to it of the inventions and prospective patents. If such finding is upheld as to the plaintiff, the real question to be determined is whether he can charge the individual stockholders, who paid for their stock in property estimated at more than its value, with the obligation to pay his judgment, on his failure to collect it of the corporation.

Many cases have been cited upon this question by the respective counsel, and it must be admitted that there is not entire uniformity in the rules laid down by the courts. But we think the true rule is stated by the supreme court

of the United States in *Coit v. Gold Amalgamating Co.* 119 U. S. 343, which was an action to charge stockholders with the debts of their corporation, on the ground that such stockholders had paid for their stock in property at a fraudulent and excessive valuation. The rule is thus stated: " If it were proved that actual fraud was committed in the payment of the stock, and that the complainant had given credit to the company from a belief that its stock was fully paid, there would undoubtedly be substantial ground for the relief asked. But where the charter authorizes capital stock to be paid in property, and the shareholders honestly and in good faith put in property instead of money in payment of their subscriptions, third parties have no ground of complaint. The case is very different from that in which subscriptions to stock are payable in cash, and where only a part of the instalments has been paid. In that case, there is still a debt due to the corporation, which, if it become insolvent, may be sequestered in equity by the creditors, as a trust fund liable to the payment of their debts. But where full-paid stock is issued for property received, there must be actual fraud in the transaction to enable creditors of the corporation to call the stockholders to account. A gross and obvious overvaluation of property would be strong evidence of fraud. *Boynton v. Hatch,* 47 N. Y. 225; *Van Cott v. Van Brunt,* 82 N. Y. 535; *Carr v. Le Fevre,* 27 Pa. St. 413."

The above rule was reaffirmed by the same court in *Bank v. Alden,* 129 U. S. 372, in which case the court was dealing with a corporation organized under the laws of this state, and its stockholders. The rule seems to us reasonable and just, and is, we think, supported by the great weight of authority.

It should be observed that this case is entirely unlike one to enforce unpaid instalments on a stock subscription. In such a case the subscriber is the debtor of the corpora-

tion, and a proceeding by its creditor to reach such unpaid instalments is in the right of the corporation. It is substantially a garnishment, and involves no question of fraud, but only of indebtedness. Not so, however, in a case like this. Here the corporation has accepted the property assigned to it as a full payment for its capital stock. It has no further claim against its stockholders on account thereof, and cannot be heard to allege that the stock has not been paid for. But a creditor of the corporation, who has trusted it in the belief that the par value of the stock has been paid, may attack the transaction, and, if he can show any fraud therein by which the subscriber has not honestly paid for his stock its par value, the court will hold the latter for the deficiency for the benefit of such creditors, if it be insolvent. The proceeding is in the right of the creditor, not the corporation, and is not to recover a specific debt as in the case of an unpaid instalment. It is to recover and appropriate to the payment of the debts of the corporation money which, by the joint fraud of the corporation and stockholders, has been unlawfully retained by the stockholders, when in justice and equity the creditors of the insolvent corporation ought to have it. Hence the rule above stated requires the presence of actual fraud in order to charge the stockholders.

The court has not expressly found any fraud in the matter of overvaluation of the property with which the stock was paid for, but did find that the stockholders to whom the stock was issued did not value the property at more than one half its par value. There is no finding of its real value at any time, but it is clear from the testimony it was never worth more than the estimation put upon it by the stockholders. In the language of the rule, this may be strong evidence of fraud, but it is not necessarily conclusive. The circuit court should have determined the quality of the act. But, for the purposes of the case, we will as-

sume that the property was fraudulently assigned to the corporation in payment for its stock at twice its actual or prospective value. This raises the question, Is the plaintiff in a condition to charge the alleged fraudulent stockholders with the payment of his judgment against the corporation? It will be observed that an essential of the plaintiff's right thus to charge such stockholders is that he gave credit to the corporation "in the belief that its stock was fully paid." The circuit court has negatived such belief on his part by finding, in substance and effect, that the plaintiff knew, when he gave credit to the corporation, that the only payment the original stockholders made for their stock was the assignment to the corporation of the inventions of *Jacobs* and the equitable title to the prospective patents therefor. The plaintiff knew as much of the value of these inventions and prospective patents as any other stockholder. If such findings are upheld, the plaintiff is not within the rule, for they demonstrate that he did not give the credit in the belief that the stock was fully paid for, and hence has no valid claim against the stockholders individually.

It is claimed, however, that such findings are unsupported by the testimony, and this brings us to consider whether there is a clear and satisfactory preponderance of evidence against them. The plaintiff denies that he knew, when he gave the credit, how the stock was paid for, or that its par value was not fully paid to the corporation, and no witness testifies directly that he gave the plaintiff such information. Yet it appears, either by direct testimony or irresistible inference from facts proved, that the plaintiff manufactured the apparatus for *Jacobs* when he was perfecting his inventions, and aided him in perfecting the same; that their relations in respect to the inventions were close and long continued, and that they had much conversation in respect thereto; that the plaintiff

knew all about the applications for the patents, and the issue thereof, and of the incorporation of the defendant company for the purpose of manufacturing and selling machines under the patents; that he manufactured a large number of the machines for the corporation, his claim against it, for which he recovered the judgment in question, being for such work; that he became a stockholder in the corporation immediately after its organization; that he knew its capital stock was $100,000, that the same purported to have been fully paid for, that the corporation had no means except the inventions and prospective patents aforesaid, and that its only reliance for working capital, with which to pay him for the machines and prosecute its business, was upon an agreement of certain of the original stockholders to make the necessary advances, by way of loans, for those purposes. The testimony also tends to show a specific conversation between *Jacobs* and the plaintiff in relation to the assignment by *Jacobs, Murphey*, and *Weil* of the contract between them to the corporation, for the purpose of paying for the stock.

It is not a forced or unreasonable inference from the facts above stated that the plaintiff knew the inventions and prospective patents were received by the corporation in full payment for its stock. From these, and perhaps other facts disclosed by the testimony, the circuit court found the plaintiff had such knowledge when he gave the credit. We cannot say that such finding is against the clear and satisfactory preponderance of the evidence. It follows that the portion of the judgment which holds the stockholders individually liable for that part of plaintiff's judgment remaining unpaid after the application thereto of the assets of the corporation is erroneous.

There is probably another reason why this portion of the judgment cannot be upheld against the defendant *Weil*. No specific relief against him is demanded in the complaint,

and he did not interpose an answer. In such case, the relief granted cannot properly exceed that claimed. R. S. sec. 2886; *Zwickey v. Haney*, 63 Wis. 464.

The circuit court awarded costs against "the defendant." This probably means each and all of the defendants. No costs should be awarded in the circuit court against either of the stockholders, for they have successfully defended the action, so far as it is against them individually. Whether costs shall be allowed them will be determined by the circuit court, in the exercise of its discretion. R. S. sec. 2918, subd. 7.

We have here three appeals, but for the purposes of costs in this court they will be considered and treated as one appeal. Only one bill of costs will be taxed, which may include the printing of the brief of each appellant.

*By the Court.*—The award of costs, and so much of the judgment as provides for an assessment upon the individual stockholders, in proportion to the amount of stock owned by each, to pay all of the plaintiff's judgment against the defendant corporation which may remain unpaid after the assets of the corporation shall be exhausted, are reversed, and the cause will be remanded for further proceedings according to law.

LYON, J. Since filing the above opinion our attention has been called to the fact that in the judgment of the circuit court herein, although costs were awarded against "the defendant," as stated in the opinion, the judgment directs the same "to be paid by the receiver out of the first moneys he shall receive." Hence the judgment only awards costs against the corporation defendant in the first instance,— not against the appellants, as was supposed. True, the costs are included in the indebtedness of the company for which the stockholders are held liable *pro rata*, but that portion

of the judgment has been reversed, and ceases to be a part of it.

We discover, also, that the direction for judgment in this court fails to mention the portion of the judgment of the circuit court which requires the defendant *Jacobs* to transfer the patents to the receiver, which portion is affirmed in the opinion.

The foregoing direction for judgment is modified in the above particulars.