MAX CARP et al., Respondents, v. L. M. CHIPLEY et al.,
Appellants.

St. Louis Court of Appeals, January 4. 1898; Motion for
Rehearing Overruled.

1. Creditor's Bill: INSOLVENCY OF DEBTOR: PROOF OF BY ONE PARTY: RIGHT OF OTHER CREDITORS TO INTERVENE. When it is proved by one of the parties to a creditor's bill that the debtor is insolvent, and there is no adequate legal remedy, all the creditors should be allowed to come in by intervening petitions.

2. ———: FRAUD: PROOF. In a proceeding by bill in equity by creditors against defendants as stockholders in a corporation, to hold them liable on stock issued for property assigned to the corporation, on the ground that it was fraudulently overvalued, it was sufficient to show that an overvaluation of the stock was knowingly made and acquiesced in by all the stockholders, to authorize a recovery.

3. ———: PAID UP STOCK: RIGHT OF ADMINISTRATRIX OF HOLDER TO RECOVER. In such proceeding, a stockholder, whose stock was paid up, not having been defrauded, his administratrix could not recover for an alleged indebtedness due him.

*Appeal from the St. Louis City Circuit Court.*—HON. PEMBROOK R. FLITCRAFT, Judge.

REVERSED IN PART (*with directions*), AND AFFIRMED IN PART.

*Geo. W. Taussig* and *John E. Bishop* for appellants.

The plaintiffs are not entitled to recover in this action, because they have not exhausted their remedy against the *Targarette Co. Bank v. Leyser*, 116 Mo. 77; *Humphreys v. Mill Co.*, 98 *Id.* 542; 4 Am. and Eng. Ency. of Law, 579.

Actual fraud must be proven in an action of this kind in order to enable plaintiff to recover. *Woolfolk v. January*, 131 Mo. 620; *Mill Co. v. Farrell*, 75 Fed. Rep. 559; *Young v. Iron Co.*, 65 Mich. 111; *Coffin v. Ramsdell*, 110 Ind. 417.

Davis had knowledge how the Mabee stock was paid for, and under no circumstances can he come in and say he was defrauded or prejudiced by such payment. Thomp. on Corp., sec. 1630; *Bank v. Gustin & Co.*, 42 Minn. 327; *Whitehall v. Jacobs*, 75 Wis. 474; Cook on Stockholders, sec. 46, p. 66, and citations.

*Johnson, Houts & Marlatt* for respondents.

An intentional overvaluation of property taken in payment of a stock subscription is fraudulent as to

creditors of a corporation, and will entitle them to recover the difference between the par value of the stock and the actual value of the property from the stockholders participating in the transaction, and their assignees with notice of the fraud. *Chouteau v. Dean*, 7 Mo. App. 210; *Shickle v. Watts*, 94 Mo. 410; *Kehlor v. Lademann*, 11 Mo. App. 550; *Bank v. Gallaher*, 43 Id. 482; *Luecke v. Tredway*, 45 Id. 507; *Woolfolk v. January*, 131 Mo. 650; *Investment Co. v. Mining Co.*, 47 N. W. Rep. (Wis.) 726; *Tube Works Co. v. Gilfillan*, 124 N. Y. 302; *Ins. Co. v. Cotton Exchange*, 46 Fed. Rep. 24; *Gilkie & Anson Co. v. Town & Gas Co.*, 64 N. W. Rep. 978.

Defendant Chipley is liable for the unpaid balance on the two hundred and fifty-seven shares of stock standing in his name on the books of the company, whether he owned them or held them in secret trust for another. *Ollesheimer v. Mfg. Co.*, 44 Mo. App. 172; *Pullman v. Upton*, 96 U. S. 328; 18 N. Y. 200.

It was not necessary for Alice E. Davis, administratrix, to first obtain judgment against the corporation before proceeding against the stockholders. *Shickle v. Watts, supra; State Savings Inst. v. Kellogg*, 52 Mo. 583; *Patterson v. Mfg. Co.*, 42 N. W. Rep. (Minn.) 926; *Hardware Co. v. Milling Co.*, 45 Pac. Rep. (Utah) 200; *Guerney v. Moore*, 131 Mo. 650.

Even if the court shall find that Judge Davis knew how the stock was paid for, and the value of the Targarette patents, such knowledge does not estop him or his representative from recovering against the stockholders. *Guerney v. Moore, supra; Tube Works v. Gilfillan, supra;* 1 Cook on Stockholders, sec. 216; *Griswald v. Seligman*, 75 Mo. 13; *Fisher v. Seligman*, 7 Mo. App. 383; *Adderly v. Storm*, 6 Hill, 624; 3 Kent's Com., p. 27; Story on Part., sec. 164. See, also, *Throckmorton v. Pence*, 121 Mo. 50; *Bank v. Doran*,

109 *Id.* 40; *Avery v. R. R.*, 113 *Id.* 561; *Thompson v. Cohen*, 127 *Id.* 215; *Plow Co. v. Lang*, 55 Mo. App. 311; *Schwartz Bros. v. Vastone*, 62 Mo. App. 241.

BLAND, P. J.—Max Carp and his partner, Pransky, filed their bill in equity as creditors against the appellants as stockholders of the "Targarette Company," a corporation, to hold them liable on stock issued for property turned in and assigned to the company, on the ground that the property was fraudulently overvalued. Afterward Alice Davis, administratrix of the estate of Alexander Davis, deceased, was on her motion made a party plaintiff, and filed her separate bill as an intervening creditor, by which she sought to charge the defendants on the same ground as alleged in the petition of Max Carp *et al.* The separate answer to the two bills filed by defendants were general denials. The claim of Carp & Pransky had been reduced to a judgment against the "Targarette Company;" two executions had been issued upon these judgments and a receiver appointed, the results of which were a return of *nulla bona* on the second or *alias* execution, and a report from the receiver that he had collected $1.60 of the accounts due the company, and that the balance shown on its account books were worthless. The claim of Alice Davis, as administratrix of her husband, Alexander Davis, was an open account for salary earned by Davis in his lifetime as general manager of the corporation, and for moneys which he had advanced to it. The case was referred to Hugh D. McCorkle, as referee, who heard the evidence, made a finding of the facts and the legal deductions to be drawn therefrom, and reported the case to the court. The following is a summary of the facts as found by him and his recommendation of the judgment that should be entered: He found that there was due to Alice Davis, adminis-

tratrix of the estate of Alexander Davis, from the "Targarette Company," the sum of $996.23 on an open account for money loaned and services rendered.

He further found that the process known as "Targarette" had been in use several months prior to the incorporation of the company, and that it was the invention of F. A. Mabee, and by him styled "Targarette," which name and style he caused to be trademarked, and had also applied for letters patent to cover the process of manufacture; that the compound had been placed upon the market in a small way by Mr. Mabee and Alexander Davis as a partnership, Alexander Davis having acquired one half interest in the invention and business for $5,000, to be paid into the business. The business did not pay, and Davis determined to sell out, and so announced. Thereupon L. M. Chipley interested himself in the matter with a view of forming a corporation to engage in the manufacture and sale of the "Targarette." Chipley made some inquiries of druggists as to the merits of "Targarette." Davis agreed to sell to Mabee for $4,450. Chipley was aware of this agreement. He finds that an arrangement was entered into between Chipley and Mabee, prior to the incorporation of the company, to the effect that the company would be incorporated for $100,000; $99,600 of the stock to be issued to Mabee ostensibly for his invention, trade mark and business; that $49,600 of this stock should be returned by Mabee to the company, part as treasury stock, part to be held by Mabee & Chipley as trustees, and the balance, $25,000, divided equally between Chipley and Mabee. This two hundred and fifty shares of the par value of $25,000, the referee finds Chipley owned and received as a present from Mabee, under an agreement to loan the same to Mabee as collateral to secure Mabee's debt to Davis. The referee finds that from the sale of the

so-called treasury stock and the stock held by Mabee and Chipley as trustees, it was intended to derive enough money to push the business of the company. Of this arrangement the referee finds that the defendants H. H. Wernse and George W. Tausing had knowledge prior to the incorporation, and that Davis likewise was apprised of this arrangement, and knew the manner of the issuing of the stock, and required $50,000 in stock to secure his note of $4,450, and that Davis took the management of the company and advanced money to it, when he knew the substantail details of the manner of the disposition of the stock, and did not rely on the supposition that the stock had been fully paid. The referee finds that the company was formed by the following named gentlemen, who subscribed the amount of stock as recited: F. A. Mabee, nine hundred and ninety-six shares; L. M. Chipley, one share; M. D. Chipley, one share; H. H. Wernse, one share; George W. Tausing, one share. That the four last named paid for their stock in full cash $100 each; that F. A. Mabee paid no cash, but transferred his business "Targarette" to the company in consideration for his stock; that at the time at least four of the directors knew of the arrangement for Mabee to turn into the treasury four hundred and forty-six shares of his stock for the use of the company. The referee found the value of the compound known as "Targarette" and all the property transferred therewith to the company by Mabee was not in excess of $25,000, and that at least four of the members of the board of directors knew it was worth much less than $99,600, and he found that the extreme improvidence of the incorporation, and the improbability of the venture succeeding under the scheme and plan adopted, amounts in law to fraud upon those who might deal with the company upon the reliance that the amount of the capital stock had

been *bona fide* subscribed and paid up as represented in the articles of incorporation.

The referee further found that F. A. Mabee is the owner of two hundred and fifty shares of the capital stock of the company, and that three fourths of their par value remains unpaid. That L. M. Chipley became at the time of the incorporation the owner and is yet the owner of two hundred and fifty-eight shares of the capital stock, of which two hundred and fifty seven shares are not fully paid up, but for which only one fourth of their par value has been paid, and that Chipley acquired the ownership of these shares knowing that they had not been fully paid. The referee found that Wernse is the owner of two shares not fully paid, but only half paid up, leaving a balance of $100 due on the two shares, and that Wernse knew at the time he purchased these shares that they had not been fully paid. The referee found that the one share of stock owned by defendants Geo. W. Tausing and the one owned by M. D. Chipley were fully paid up, and that the five shares of stock purchased by Jessie C. Tutt had not been fully paid, but that she purchased the same believing that the same had been fully paid and was nonassessable; and that Jessie A. Cable had not been served with process. The referee further found that the "Targarette Company" is insolvent and had ceased doing business and had disposed of all its personal property. He further found that plaintiffs Carp & Pransky, at the time they manufactured the goods for which they had obtained their judgment, believed that the stock had been fully paid and relied upon that fact, and that no part of the judgment had been paid. As a conclusion of law, the referee found from the foregoing summary of the facts as found by him, that defendants L. M. Chipley and H. H. Wernse are the holders of stock which has never been fully paid

up in money, or its equivalent in property; that said
L. M. Chipley is the holder and owner of two hundred
and fifty-seven shares of stock, upon which there
remains unpaid the sum of $19,275; that said H. H.
Wernse is the holder and owner of two shares of stock
upon which the sum of $100 is unpaid; that Chipley
and Wernse, having been fully cognizant of the manner
of the pretended payment of this stock, were aware
that the same had not been fully paid for in money or
its equivalent in value, were not innocent purchasers
or transferees of this stock, and that therefore the
stock in their hands or owned by them as aforesaid, is
chargeable for the unpaid balance, at the suit of plain-
tiffs Carp and Pransky, who at the time they dealt
with the company were ignorant of the fraudulent
actions of the company, and of its issue of stock in
payment of property worth less than one fourth of the
par value of the stock so issued. He found for Jessie
Tutt on the ground that she was an innocent pur-
chaser, unaffected by the fraud of Chipley & Wernse.

In regard to the claim of Alice Davis, administra-
trix, the referee recommended that judgment be ren-
dered in her favor against the "Targarette Company"
for $997.23, with interest from date of suit, but not
against the other defendants in the case; and recom-
mend judgment in favor of Carp & Pransky for the sum
of $273.45, with six per cent interest from May 14, 1895,
with costs accrued in the case of *Carp & Pransky v.
The Targarette Company*, obtained May 14, 1895,
amounting to $59.75 and for costs of this suit, against
L. M. Chipley and H. H. Wernse, to be levied out of
the amount due by each for unpaid stock owned by
each, as found by the report, and that neither shall be
adjudged to pay more than the unpaid balance due by
him. It was recommended that the suit be dismissed as
to F. A. Mabee and Jessie C. Cable, for lack of service of

summons on them, and that judgment be rendered in favor of M. D. Chipley, George W. Tausing and Jessie C. Tutt. Separate exceptions to the report of the referee were filed by defendants Chipley and Wernse, and exceptions were also filed by the intervener, Alice Davis. The exceptions filed by Alice Davis were sustained, the court holding that the referee had erred in his conclusions of law applicable to her claim as administratrix of the estate of Alexander Davis, deceased, and entered judgment in her favor against Chipley and Wernse for the amount of her claim as found by the referee. The exceptions filed by Chipley & Wernse were sustained in part, the court finding from the report of facts found by the referee that there had been $75 paid on each of the two shares of stock purchased by Wernse, instead of $50, as found by the referee, and that there were but $25 per share remaining unpaid on said two shares. Judgment was then entered against Chipley & Wernse for Carp & Pransky for the full amount due upon their judgment against the "Targarette Company," including costs accrued in the procuring of the judgment, and for the full amount found by the referee to be due Alice Davis, administratrix of the estate of Alexander Davis, on the open account. These sums, with the costs of the suit, the court found should be paid by defendant L. M. Chipley, and if execution against him should prove unavailing, then execution to issue against H. H. Wernse for any unpaid balance, not to exceed the sum of $50. The petitions as to M. D. Chipley, George W. Tausing and Jessie C. Tutt were dismissed. Defendants L. M. Chipley and H. H. Wernse perfected their appeal, and bring the case here for review.

The evidence in the case is quite voluminous.

This we have carefully gone over, and find that the summary of the facts set out above taken from the

report of the referee, are amply sustained by the testimony as preserved in the bill of exceptions. With this statement we deem it unnecessary to discuss the evidence in this opinion. The finding of the court that the two shares purchased by Wernse had been paid, with the exception of $25 on each share, we think, is supported by the report of the facts as found and reported by the referee. The fact that twenty-five per cent of these shares were paid by Mabee's property which he transferred to the corporation, as found by the referee, was overlooked by the referee when he made his calculation as to the balance due on these two shares, and the action of the court was but a correction of this error. However, there is no complaint made here of the correction, and it need not be further noticed. The appellants contend that the respondents ought not to recover in this action because, as they contend, they have not exhausted their CREDITOR's bill: legal remedy. It is a well settled principle insolvency of debtor: proof of of equity jurisprudence that a creditor's by one party: right of other bill can not be maintained until the cred- creditors to in- tervene. itor has exhausted his legal remedy, or he must show that he has no adequate legal remedy. *Humphreys v. Milling Company*, 98 Mo. 542. Carp & Pransky had exhausted their legal remedy against the corporation under the judgment at law obtained by them against the "Targarette Company;" two successive executions had been returned *nulla bona;* this, taken in connection with the report of Browning, the receiver, demonstrates that Mrs. Davis had no legal remedy against the company. A judgment on her claim against it would have been wholly unavailing and a useless proceeding; in such circumstances it should not be held that she should be required to first go through the useless and expensive form of obtaining a judgment and of having an execution issued and

returned *nulla bona*, in order to entitle her to come in as a creditor in a case pending, and of which the court had the unquestioned right to proceed as in equity. The whole object of the rule in requiring a party to first reduce his claim to a judgment and have execution issued thereon and returned *nulla bona* before proceeding in equity in a case of this kind, is to demonstrate that the legal remedy is unavailing.

And while most of the authorities hold that a judgment and a return of *nulla bona* on execution is the only acceptable proof of insolvency to entitle the complainant to proceed in equity, yet it seems to us that when the fact has been thus proved by one of the parties in an equitable proceeding that other creditors may intervene and they should not be turned away and required to sue at law in order to make proof of a fact already in evidence. In other words, when it is established by one of the parties to a creditor's bill by the means recognized by the law, that the debtor is insolvent and that for that reason there is no adequate legal remedy, then all creditors should be allowed to come in by intervening petitions. *Huntington v. Nicoll*, 3 Johns. 566. The corporation owned no real or personal property, and, as was said by Judge WAGNER in *State Savings Association v. Kellogg et al.*, 52 Mo. *loc. cit.* 589, "was in point of good sense dissolved." Further on, at page 591, Judge WAGNER says that "the mere bringing of a suit under such a state of facts would have been idle, vain and fruitless," and approvingly citing *Huntington v. Nicoll, supra*. It was said in *Shickle v. Watts*, 94 Mo. *loc. cit.* 420, that "where the dissolution of a corporation sufficiently appeared *aliunde*, it is not necessary to obtain a judgment dissolving the corporation before proceeding against the stockholders. In *Guerney v. Moore*, 131 Mo. *loc. cit.* 666, it is said that "the maxim 'that the law does not

require a vain or impossible thing,' is peculiarly applicable to proceedings against the stockholders of a corporation.'' The doctrine of these cases are applicable to the case in hand, and we hold that Mrs. Davis was properly permitted to file and prosecute her intervening petition. The right of Carp & Pransky to recover in this case depends upon whether or not there was a joint fraud between the "Targarette Company" and its stockholders, as it is conceded that they are innocent creditors and gave credit on the belief that its capital stock of $100,000 had been fully paid up. To authorize a recovery in a case like this, the fraud must have been actual, that is, intentional, as contradistinguished from constructive or nonintentional fraud. *Woolford v. January*, 131 Mo. 620. On the thirty-first of May, a few days after the incorporation of the company, at a meeting of the directors, which was composed of all the stockholders, the following resolution was passed:

CREDITOR'S bill: fraud: proof.

"Whereas, F. A. Mabee is the owner of a certain medical compound known as Targarette, and of a certain registered trade mark, Targarette, number 24,469, registered in the United States Patent Office, April 3rd, 1894, which said medical compound, and any patent that may be granted thereon and said trade mark, said Mabee is desirous of selling to the Targarette Company, and whereas said Targarette Company, believing that said medical compound is of great value, to wit, ninety-nine thousand, six hundred dollars; be it therefore

"Resolved, By the board of directors of the said Targarette Company, that in consideration of the transfer and assignment by the said Mabee of all his rights, title and interest in said medical compound and in letters patent, application for which is now pending at

Washington, D. C., on said medical compound, known as Targarette, and in the registered trade mark number 24,469, registered in the United States Patent Office, April 3rd, 1894, this company be authorized to pay to said Mabee the said sum of ninety-nine thousand, six hundred dollars ($99,600), and that the secretary and president of this company be authorized to issue to the said Mabee in full payment and discharge of the said sum of ninety-nine thousand, six hundred dollars, nine hundred and ninety-six (996) shares of the capital stock of this company, fully paid and non-assessable, and that upon the issue and delivery of said shares to said Mabee, this company stands acquitted and discharged of any further liability and obligation to said Mabee, his heirs, administrators or assigns, for any further payment on account of the premises.''

Immediately after the passage of this resolution L. M. Chipley was elected president and treasurer, and F. A. Mabee secretary and manager. Mabee returned to the company four hundred and ninety-six shares of the nine hundred and ninety-nine he had received for his Targarette preparation and other property belonging to the business. The referee finds that this arrangement was agreed upon before the organization of the corporation, and that all the other stockholders were cognizant of the fact. Two hundred and fifty of these four hundred and ninety-six shares were returned direct to the treasury; two hundred and forty-six shares were transferred to Chipley and Mabee as trustees (of what, or for whom, or for what purpose, does not appear). Mabee also transferred two hundred and fifty shares of stock to Chipley, which Chipley loaned back to him, to be deposited as security for his indebtedness of $4,450 to Alexander Davis; the remaining two hundred and fifty shares held by Mabee be transferred to his wife.

The referee found that the value of the Targarette

preparation, the business, etc., transferred by Mabee to the corporation, did not exceed $25,000 in value. In view of the fact that Mabee had a short time prior to selling to the corporation sold to Davis one half interest in this preparation for $5,000, and repurchased it on the eve of the formation of the company for $4,450, and in view of the manipulations made by Mabee and L. M. Chipley with a large portion of Mabee's nine hundred and ninty-six shares of stock, it can not be doubted for a moment that the referee was extremely liberal in the limit he fixed, beyond which the value of this property could not be placed. Was there actual fraud between the corporation and its stockholders? The referee found from the evidence that all the stockholders were apprised of the arrangement between Mabee and L. M. Chipley with reference to Mabee's stock, and the evidence tends very strongly to show that they all had considerable information on Targarette and its business history, and that it had not succeeded as a business venture in the hands and under the management of Mabee, and later of Mabee and Davis. The conclusion is irresistible that the Targarette and the Targarette business was valued at more than three times its actual value by Mabee, and that the stockholders and corporation accepted it from Mabee and issued stock to him therefor largely in excess of its true value knowingly. That an intentional overvaluation of stock such as was purposely made in this case, and acquiesced in by all the stockholders, was actually and grossly fraudulent as to *bona fide* creditors, is supported by all the well considered cases. *Ins. Co. v. Cotton Exchange*, 46 Fed. Rep. 22; *Gilkie & Anson Co. v. Dawson Town & Gas Co.*, 54 N. W. Rep. 978; *National Tube Works v. Gilfillan*, 134 N. Y. 302; *Shickle v. Watts*, 94 Mo. 410; *Bank v. Gallaher*, 43 Mo. App. 482; *Lueche v. Tredway* and *Woolfolk v. January*, *supra*.

The referee found that L. M. Chipley owned two hundred and fifty shares of the stock transferred to him by Mabee. Chipley's testimony was that he held them in trust for Mabee. If he did so hold them, the trust was a secret one, and he is liable individually for any unpaid balance due on these shares. *Ollesheimer v. Mfg. Co.*, 44 Mo. App. *loc. cit.* 184; *Pullman v. Upton*, 96 U. S. 528. The evidence established the fact and the referee so found that Alexander Davis had full knowledge of all that was done by the stockholders at the organization of the company; knew that Mabee received nine hundred and ninety-six shares for his Targarette preparation and business; he must, from the opportunities he had, have known the value of Targarette and the business, and we are bound to presume that he knew that this property was vastly overvalued, and that Mabee's nine hundred and ninety-six shares of stock were given for fictitious values turned over by him to the corporation. With knowledge of all these facts, how can it be claimed that he was deceived or misled by the agreement between the corporation and Mabee; how can it be said that he gave credit to the corporation, believing that full value had been paid for the Mabee stock; by what corporate act or act of Chipley and Wernse was he defrauded? The record discloses none.

He knew to whom he was giving credit; he knew what he had to rely upon for his salary and for a reimbursement of the moneys he advanced to the company—the success of the business of the corporation—not for any unpaid balance due upon its stock. As to Davis this stock was paid up, and he could not recover of a stockholder if living. His administratrix stands in his shoes and occupies no higher position. This is so, not upon the ground of equitable estoppel, but upon the ground that Davis has not been defrauded. Thompson

PAID up stock: right of administratrix of holder to recover.

on Corporations, sec. 1630; *Whitehall v. Jacobs*, 75 Wis. 474. It is ordered that the judgment of the circuit court in favor of Alice E. Davis, administratrix, as against L. M. Chipley and H. H. Wernse, be reversed, with directions to the circuit court to enter judgment in favor of the said L. M. Chipley and H. H. Wernse against the said Alice E. Davis, administratrix, and that she recover nothing by her suit. It is further ordered that the judgment of the circuit court as to all other parties to the suit be and the same is hereby affirmed. It is further ordered that the motion for rehearing be overruled. All concur.