## CONTINENTAL ADJUSTMENT CO. v. COOK et al.

(Circuit Court, E. D. Wisconsin. December 28, 1906.)

1. CORPORATIONS—CREDITORS' SUIT AGAINST STOCKHOLDERS—GROUNDS OF LIA-
BILITY.

Complainant's assignors organized a corporation, to exploit a supposed
invention, which contracted with defendants to manufacture the article
covered by such invention, and they expended a large amount of money
therein for which they were never reimbursed, the corporation being with-
out capital and the project an entire failure. Such assignors caused a
large amount of the stock, purporting to be full paid, to be transferred
to defendants, which they neither purchased nor agreed to pay for, and
which was in fact worthless. Such assignors having obtained a judg-
ment against the corporation, complainant as their assignee for its col-
lection brought suit against defendants to enforce contribution from them
as stockholders. *Held*, that such bill was without equity and could not
be maintained.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §
952.]

2. SAME—PARTIES.

To a suit by a judgment creditor of a corporation against part only of
the stockholders to enforce an unpaid stock liability, the corporation is
an indispensable party.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §
1118.]

In Equity.

This is on final hearing of a suit in the nature of a creditors' bill to en-
force contribution from the defendants, as stockholders in a corporation known
as the "Cushman United Telephone Company," organized in the state of Illi-
nois in February, 1905. The suit is brought in the interest of S. D. and I. M.
Cushman, who are the real parties in interest. The Continental Adjustment
Company is a collecting agency to whom the cause of action has been assigned
for the purpose of bringing this suit.

It appears that on the 8th day of January, 1896, S. D. Cushman and I. M.
Cushman recovered a judgment in the superior court of Cook county against
the Cushman United Telephone Company for $250,000, and the relief prayed
in this suit is contribution from each of the defendants, as a stockholder of said
Cushman United Telephone Company, of a sum sufficient to satisfy said
judgment, upon which execution has been issued and returned nulla bona.

S. D. Cushman claimed that in 1851 he discovered that articulate speech
could be transmitted on a wire, but he was never able to make his discovery
practicable. Other inventors occupied the field and secured letters patent cov-
ering the art: but Cushman still insisted that the invention was his, and
that it was his right and privilege to manufacture telephones embodying his
inventive thought, notwithstanding the action of the Patent Office. He entered
into a contract, for the consideration of $5, with William C. Deane, who ap-
pears to have been a clerk in a country store, and who is denominated by Mrs.
Cushman in her testimony as a "mere figurehead." By this contract Cushman
assigned and transferred to Deane his invention and all papers connected with
the same, while Deane on his part agreed to organize a corporation, to give
Cushman one-fifteenth of the stock, making him director, and further agree-
ing to pay the Cushmans $150 a month until the dividends on their stock in
the projected corporation should equal $500 per month. Thereupon applica-
tion was made for a charter for a corporation to be known as "Cushman United
Telephone Company," with a capital stock of $20,000,000. The subscription
to the capital stock was made by six persons, who subscribed for one share
of $100 each, to be paid for "either in cash or property or services," while
$19,999,400 of such stock was subscribed for by William C. Deane, who, by
the contract before mentioned, had become the owner of the Cushman inven-

tion, which appears to have been the only asset in sight. Certificates of stock were issued to Deane for $19,999,400. Deane then assigned his contract with Cushman to the Cushman United Telephone Company, and indorsed his certificates in blank—some of which were reissued to the Cushmans—and it seems to have been the theory of this unique corporation that this stock, having been thus issued, could be sold or disposed of at pleasure. The corporation never appears to have had any capital. It may be said to have capitalized an idea of doubtful value. In 1905 Cushman importuned the defendant Cook, who then had a vacant factory at Oconto, Wis., to undertake the manufacture of telephones to embody the features of the Cushman invention. On the 29th of April, 1905, the parties came to an agreement, which is embodied in a written memorandum introduced in evidence, whereby the defendant Cook agrees to manufacture or supply the Cushman Telephone Company with certain instruments and appliances, to be constructed according to designs furnished by said company, in which the company agreed to pay him the costs of manufacture with 10 per cent. added. The defendants Beyer and Pampherin agreed to coöperate with Cook in this experiment. Thereupon Cushman caused $5,000,000 of stock theretofore issued to Deane to be reissued to Cook. $250,000 was also issued to the defendant Beyer, and a similar amount to the defendant Pampherin, all of which on its face purported to be full paid and nonassessable. Neither of the defendants subscribed for any stock, and neither agreed to pay anything therefor. It seems to have been considered as a bonus to encourage and stimulate the development of the Cushman invention, and perhaps an inducement for entering into the contract to manufacture. Thereupon the defendant Cook, with the assistance of his codefendants, did undertake. at his home at Oconto, Wis., to manufacture the Cushman telephone. He bought a large amount of material and manufactured a large number of telephone instruments and appliances. He expended between fifty and sixty thousand dollars of his own money, while the defendant Beyer contributed something over $6,000. The experiment proved a failure. because the Bell Company had usurped the field, and the Cushman device was held to be an infringement. When this stock was so issued to the defendants, Cook and Beyer were elected officers of the Cushman United Telephone Company, Beyer being president, and Cook general manager. After the failure of their manufacturing enterprise, the defendants declined to participate in any meetings or further operations of the corporation. In the meantime the Cushmans brought suit against the Cushman United Telephone Company upon the Deane contract, which had been assumed by the corporation, and recovered the judgment to which reference has been heretofore made.

S. C. Herren, for complainant.

Greene, Fairchild, North & Parker, for defendants.

QUARLES, District Judge (after stating the facts). This is to all intents and purposes a suit by S. D. and I. M. Cushman, although brought in the name of the Continental Adjustment Company. The complainant has merely taken an assignment of the cause of action for the purpose of collection. It therefore stands as the representative of the Cushmans, and has no superior rights or equities. The Cushmans were instrumental in the issuance of the stock to the defendants, and, being stockholders themselves, they stand upon a different footing from an ordinary creditor. Fort Madison Bank v. Alden, 129 U. S. 372, 380, 9 Sup. Ct. 332, 32 L. Ed. 725.

The bill states that the stock which was issued to the defendants had been theretofore subscribed for and issued to William C. Deane, and that such stock had thereafter been transferred back to the said corporation by said Deane, and was thereafter subscribed for and reissued to the defendants. It is elementary that, when stock has been subscribed for and actually issued to outside parties, it is not then the

subject-matter of subscription. Bates v. The G. W. Tel. Co., 134 Ill. 536, 545, 25 N. E. 521. But the testimony shows that neither of the defendants undertook to subscribe or pay for this stock. It was well understood that there was nothing behind the stock except the Cushman invention. There was no money in the treasury, and therefore everything depended upon finding a party who would furnish the money to make the experiment that the defendants actually made. The question, therefore, resolves itself into this: Is the bare possession of certificates, such as these, a ground for recovery in equity under the circumstances here disclosed?

I cannot see that there is any ground upon which the court can proceed. There is no averment in the bill that the stock when transferred to the defendants had any value whatever, and, if when so disposed of, it was without value, no wrong was done to creditors. Fogg v. Blair, 139 U. S. 118, 11 Sup. Ct. 476, 35 L. Ed. 104. In Christensen v. Eno, 106 N. Y. 97, 12 N. E. 648, 60 Am. Rep. 429, the court say:

"The liability of a stockholder to pay for stock does not arise out of his relation, but depends upon his contract, express or implied, or upon some statute, and, in the absence of either of these grounds of liability, I do not perceive how a person to whom shares have been issued as a gratuity has by accepting them committed any wrong upon creditors, or made himself liable to pay the nominal face of the shares as upon a subscription or contract."

To the same effect are Gilman v. Gross, 97 Wis. 227, 72 N. W. 885; Whitehill v. Jacobs, 75 Wis. 474, 482, 44 N. W. 630.

Upon what theory can the court decree, in the absence of fraud, that the defendants should pay for this stock more than it was worth and more than they agreed to pay? The evidence tends to show that defendants carried out their agreement with the Cushmans, and, for aught that appears either in the bill or in the proofs, they invested in experimental work more than the stock was worth. It seems to me, therefore, that the bill discloses no equity.

There is another good and sufficient reason why the complainant cannot recover in this suit. In a proceeding of this kind, where only part of the stockholders are joined, the corporation, the original debtor, is an indispensable party, if it retains its corporate existence. If it has been dissolved, then all the stockholders must be brought before the court. This is not an arbitrary rule, but one founded upon the maxims of equity, which require the presence of all parties who will be affected by the decree of the court, so that the rights of all may be considered, and complete justice done. When the corporation is before the court, the absent stockholders are in a sense represented; but to hold that a proceeding of this kind can be maintained against one or more delinquent stockholders alone would be contrary to the fundamental theory of a court of equity. This proposition is all-important here, because jurisdiction depends upon diverse citizenship only. The corporation is a citizen of Illinois. So that our jurisdiction depends upon an answer to the proposition now under consideration.

The federal rule is well stated in First National Bank v. Smith (C. C.) 6 Fed. 215 (which was a suit like this, to enforce contribution from delinquent stockholders):

"It is too clear to admit of discussion that the corporations are necessary parties to suits like these. Unless they are made parties, they will not be concluded by decrees made in the cases on the merits, and the defendants might be called upon a second time to account for the same assets at the suit of the corporation or receivers appointed over their affairs. The defendants have the right to insist that the decree shall conclude the plaintiffs, the corporations, and all other creditors, and afford a full and complete protection against future suits for the same causes of action. Such decrees cannot be made in suits where the corporations are not parties, or by a court having no jurisdiction to require the legal presence of the corporations in the proceedings."

To the same effect, Dormitzer v. Illinois Bridge Co., 6 Fed. 217, 219, decided by the Circuit Court. To the same effect, Elkhart National Bank v. N. W. Guaranty Co., 87 Fed. 252, 30 C. C. A. 632; 1 Foster's Fed. Practice, § 53; Cook on Stockholders, § 206.

The same rule is distinctly held in Illinois, in Patterson v. Lynde, 112 Ill. 205, where the court say, in substance, that to enforce the liability of the stockholder for his unpaid stock, in equity, it is indispensable that the corporation should be before the court, so as to be bound and concluded by its action. Swan Co. v. Frank, 148 U. S. 603, 13 Sup. Ct. 691, 37 L. Ed. 577; Wetherbee v. Baker, 35 N. J. Eq. 501; Medberry v. Troutman (C. C.) 94 Fed. 952, 954; Walsh v. Memphis (C. C. Ky.) 6 Fed. 797.

Complainant calls attention to the case of Hatch v. Dana, 101 U. S. 205, 25 L. Ed. 885, as an authority in favor of his contention. In that case the corporation was joined with several stockholders, and at some time during the proceedings the complainant discontinued as to the corporation and one of the stockholders. Why this was done does not appear in the reported case. It must have been done by consent of parties, and therefore the question we are considering was neither raised nor passed upon.

I cannot agree that the Illinois authorities cited by complainant sustain his views. It is repeatedly decided that all of the delinquent stockholders need not be joined in such a bill, but the corporation has been made a party. I cannot find that the well-reasoned case of Patterson v. Lynde has been overruled.

Other points have been raised by counsel for defendants, but it is unnecessary to discuss them.

For want of equity, and because defective as to parties, the bill must be dismissed, with costs. So ordered.